UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN MARCELLETTI, *on behalf of himself and all others similarly situated*,

                    Plaintiff,

      v.

GEICO GENERAL INSURANCE COMPANY,

                    Defendant.
_____

**DECISION AND ORDER**

6:23-CV-06211 EAW

## INTRODUCTION

      Plaintiff John Marcelletti ("Plaintiff") brings this putative class action against defendant GEICO General Insurance Company ("GEICO" or "Defendant"), asserting a claim for breach of contract based on Defendant's failure to pay sales tax for total loss vehicles that are leased. (Dkt. 1). Presently before the Court is Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 12). For the reasons that follow, the Court denies Defendant's motion.

## FACTUAL BACKGROUND

      The following facts are taken from Plaintiff's complaint. As required at this stage of the proceedings, Plaintiff's factual allegations are treated as true.

      Plaintiff resides in New York and was a named insured under an automobile policy issued by GEICO. (Dkt. 1 at ¶¶ 1, 12). GEICO uses its standard form policy in New York, which contains language regarding comprehensive and collision coverage for vehicles that

are deemed to be a total loss. (*Id.* at ¶ 14). Under the policy, GEICO may choose to pay the actual cash value ("ACV") to the insured when the cost to repair or replace the vehicle is more than the vehicle's value. (*Id.* at ¶ 15). ACV is defined in the policy as "the replacement cost of the auto or property less depreciation or betterment." (*Id.* at ¶ 4; Dkt. 1-1 at 10; *see also* Dkt. 1-1 at 12) (emphases omitted).

Plaintiff insured a leased vehicle under a policy through GEICO. (Dkt. 1 at ¶¶ 19, 20). On or about September 27, 2019, Plaintiff was involved in an automobile accident, after which his insured vehicle was determined to be a total loss. (*Id.* at ¶ 21). Plaintiff filed a claim for property damage pursuant to the policy with GEICO. (*Id.*). GEICO provided Plaintiff with a "Total Loss Settlement Explanation" document that stated that his insured vehicle had a base value of $18,043.00 and that he was entitled to $17,115.00 as the total settlement for his claim. (*Id.* at ¶ 24; Dkt. 1-1 at 53). The document further stated that Plaintiff was not entitled to any payment for sales tax. (*Id.*). GEICO paid $17,115.00 to Plaintiff's leasing company as the ACV payment for the claim. (Dkt. 1 at ¶ 24). Plaintiff replaced his vehicle and incurred sales tax in doing so. (*Id.* at ¶ 26).

In New York, sales tax must be paid when purchasing any vehicle. (*Id.* at ¶ 5). Sales tax is also required to lease a vehicle, and it must be paid at the outset of the lease agreement, based on the amount of the lease payments over the term of the agreement, pursuant to New York Tax Law § 1111(i). (*Id.* at ¶ 28). GEICO refused to pay sales tax to Plaintiff and other similarly situated insureds as part of the ACV for the loss of their leased vehicles. (*See id.* at ¶¶ 6-8).

**PROCEDURAL BACKGROUND**

Plaintiff commenced this action on April 17, 2023. (Dkt. 1). Defendant thereafter filed the instant motion to dismiss, which Plaintiff has opposed. (Dkt. 12; Dkt. 19). Defendant completed the briefing by filing a reply in further support of its motion to dismiss. (Dkt. 20). Plaintiff subsequently filed a notice of supplemental authority (Dkt. 21) alerting the Court to *Sos v. State Farm Mut. Auto. Ins. Co.*, No. 21-11769, 2023 WL 5608014 (11th Cir. Aug. 30, 2023), to which Defendant filed a response (Dkt. 22).

**DISCUSSION**

**I.      Legal Standard—Rule 12(b)(6)**

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation omitted).

## II.  Plaintiff States a Breach of Contract Claim

Plaintiff's complaint contains a single cause of action—a breach of contract claim asserted under New York law. (Dkt. 1 at ¶¶ 49-61). Unless the Court concludes that the automobile insurance policy issued by GEICO to Plaintiff—the contract—unambiguously does not require the payment of sales tax on a leased total loss vehicle, it would be improper to dismiss the claim at this stage of the proceedings. In other words, "[a]ny contractual ambiguities must be resolved in the plaintiff's favor" on a Rule 12(b)(6) motion. *Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635, 639-40 (S.D.N.Y. 2020); *see Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005) ("[A]t this procedural stage [on a Rule 12(b)(6) motion], we should resolve any contractual ambiguities in favor of the

plaintiff."); *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004) ("Unless for some reason an ambiguity must be construed against the plaintiff, a claim predicated on a materially ambiguous contract term is not dismissible on the pleadings.").

"Under New York law, a breach of contract claim has four elements: '(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages.'" *Acquest Holdings, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 217 F. Supp. 3d 678, 686 (W.D.N.Y. 2016) (quoting *First Inv'rs Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998)). Here, there is no dispute that a valid contract exists through Plaintiff's automobile insurance policy with Defendant. Plaintiff attached as an exhibit a copy of the policy form that he believes Defendant was using at the time his vehicle became a total loss. (Dkt. 1 at ¶ 4 n.1; Dkt. 1-1 at 2-24).[1] "For purposes of [Rule 12(b)(6)], the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quotation omitted). Accordingly, the Court may consider the policy in connection with Defendant's motion.

The gravamen of Plaintiff's complaint is that Defendant breached the policy by failing to include sales tax in its calculation of ACV when paying him for the loss of his

---

[1] Plaintiff attached as a separate exhibit a copy of Defendant's standard form policy that the New York Department of Insurance approved in April 2020 (Dkt. 1-1 at 26-50) and noted that the two exhibits contain materially identical provisions on the pages at issue in this action (Dkt. 1 at ¶ 4 n.1).

insured vehicle. Defendant argues that the Court should dismiss Plaintiff's breach of contract claim because: (1) "[t]he unambiguous policy language of his insurance contract with GEICO . . . does not require payment of sales tax on a lease agreement"; (2) "Section 216.6 of New York's Compilation of Codes, Rules and Regulations ('Regulation 64') does not require payment of sales tax on leased totaled vehicles"; and (3) "New York Tax Law §1111(i) does not require payment of sales tax on a leased *vehicle*." (Dkt. 13 at 4 (emphasis in original)). For the reasons discussed below, the Court disagrees that the policy unambiguously does not require payment of sales tax under the circumstances alleged in the complaint. As such, it would be improper to dismiss Plaintiff's cause of action for breach of contract. Moreover, because the Court concludes that, construing any ambiguities in favor of Plaintiff on this Rule 12(b)(6) motion, the insurance policy can reasonably be interpreted as including sales tax within the scope of ACV for leased vehicles, the Court need not and does not reach Defendant's arguments regarding the requirements of Regulation 64 and New York Tax Law § 1111(i).[2]

Under New York law, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) (citation and quotation omitted). If the terms of the insurance contract are unambiguous, the Court will enforce the contract as it is written. *See id.* Whether an ambiguity exists is a "threshold

---

[2]   Defendant does not contend that Regulation 64 prohibits it from contractually agreeing to pay sales tax on leased total loss vehicles, only that it does not require it to do so. (*See* Dkt. 13 at 4).

- 6 -

question of law to be determined by the court." *Duane Reade Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 390 (2d Cir. 2005). "The test for ambiguity is whether the language in the insurance contract is 'susceptible of two reasonable interpretations.'" *MDW Enters. v. CNA Ins. Co.*, 4 A.D.3d 338, 340-41 (2d Dep't 2004) (quoting *New York v. Home Indem. Co.*, 66 N.Y.2d 669, 671 (1985)); *see also Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156-57 (2d Cir. 2016) ("A contract is ambiguous under New York law if its terms could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." (quotation omitted)). "[T]he ambiguities in the policy ordinarily are construed in favor of coverage and against the insurer, because as the drafter of the policy the insurer is responsible for the ambiguity." *Andy Warhol Found. for Visual Arts, Inc. v. Fed. Ins. Co.*, 189 F.3d 208, 215 (2d Cir. 1999); *see also Goldberger v. Paul Revere Life Ins. Co.*, 165 F.3d 180, 182 (2d Cir. 1999) (collecting cases).

Here, both parties assert that the language in the policy is unambiguous and supports their respective positions on the question of whether Defendant is required to pay sales tax as part of the ACV for the total loss of Plaintiff's leased vehicle. (*See* Dkt. 13 at 4-5; Dkt. 19 at 13-14). Defendant points to language in the policy that limits its liability to only the loss of or damage to the auto itself. (*See* Dkt. 13 at 4). Specifically, under "LOSSES WE WILL PAY FOR YOU, Collision," the policy states, "We will pay for collision loss to the

owned or non-owned[3] auto for the amount of each loss less the applicable deductible." (Dkt. 1-1 at 11) (emphases omitted). Loss is defined as "direct and accidental loss of or damage to: (a) the auto, including its equipment; or (b) other insured property." (*Id.* at 10). Defendant also cites language in the policy under "LIMIT OF LIABILITY," which states in relevant part that its liability is limited to "the actual cash value of the property at the time of the loss." (*Id.* at 12). Later in that section, the policy states that "[the ACV] of property will be determined at the time of the loss and will include an adjustment for depreciation/betterment and for the physical condition of the property." (*Id.*) (emphases omitted). Defendant notes that the policy is silent on the issue of sales tax, and argues the policy does not require it to treat "leased and owned[4] vehicles . . . identically for sales tax purposes." (Dkt. 13 at 4-5). As such, tax on a lease agreement is not a "loss" under the policy, according to Defendant. (*Id.* at 5).

Plaintiff argues that the policy "defines [ACV] as requiring GEICO to pay the 'replacement cost' of insured vehicles after a total loss." (Dkt. 19 at 7). In other words, in Plaintiff's view, the insurance policy is unambiguous in defining the ACV as future-looking

---

[3]  Whether a vehicle is "owned" or "non-owned" is separate from the question of whether the vehicle was purchased or leased. The policy has specific definitions of an "owned auto" (including autos that are leased for a period of six months or more) and a "non-owned auto." (Dkt. 1-1 at 10-11).

[4]  At times, the parties use "owned" when referencing vehicles that were purchased, rather than leased. (*See* Dkt. 13 at 4-5; Dkt. 19 at 14, 20). Since the insurance policy has specific definitions of "owned" and "non-owned" autos that do not differentiate between purchased and leased vehicles—the distinction at the heart of this action—the Court will use "owned" only when quoting the parties' arguments or the definition of an "owned auto" in the insurance policy. (*See* Dkt. 1-1 at 10).

in that it is based on what it would cost to replace the vehicle that was a total loss. Plaintiff cites cases in other jurisdictions, applying their respective state laws, for the proposition that "ACV defined as 'replacement cost' is reasonably interpreted to include sales tax." (*Id.* at 13). Plaintiff argues that the policy's definition of an "owned auto" supports his position because both purchased and leased vehicles are "owned auto[s]" and are afforded the same insurance coverage. (*See id.* at 14).[5] If Defendant had sought to provide different coverage for leased vehicles, it was required to explicitly say so in the policy, according to Plaintiff. (*Id.*).[6]

The Court finds that Plaintiff's proffered interpretation of the policy is reasonable, which is all that is required to deny the instant motion to dismiss.[7] As noted above,

---

[5] In making this argument in particular, Plaintiff cites *Roth v. GEICO Gen. Ins. Co.*, No. 16-62942-Civ-DIMITROULEAS, 2018 WL 3412852, at *8-13 (S.D. Fla. June 13, 2018). Plaintiff acknowledges (Dkt. 19 at 7) that this decision has been vacated upon the parties' joint motion in that case. *See Roth v. GEICO Gen. Ins. Co.*, No. 16-62942-Civ-WPD, No. 18-61361-Civ-WPD, 2020 WL 5507208, at *1 (S.D. Fla. Aug. 27, 2020). Defendant makes much of the vacatur of this decision, calling Plaintiff's citations to it "egregious" and suggesting that they should be "ignored and struck" because the decision has "zero precedential value." (Dkt. 20 at 5 n.1). Defendant's outrage is misplaced. A decision that was vacated other than on the merits may still be considered for its persuasive (as opposed to precedential) value, *see Brown v. Kelly*, 609 F.3d 467, 477 (2d Cir. 2010), and Plaintiff made the status of *Roth* clear in his papers.

[6] Defendant appears to take the position that coverage is the same under the policy language for both purchased and leased vehicles—in neither case does the policy include sales tax within the definition of ACV. However, because New York law includes sales tax within the definition of ACV, according to Defendant, the scope of ACV for purchased vehicles is broadened by virtue of New York law. (*See* Dkt. 20 at 6 n.2).

[7] Plaintiff makes a cursory suggestion that the Court could enter summary judgment in his favor based on the "unambiguous" terms of Regulation 64. (*See* Dkt. 19 at 20). However, Plaintiff has not cross-moved for summary judgment nor satisfied any of the

Defendant argues that the policy is "silent on sales tax" and thus does not obligate it to include sales tax in its calculation of ACV. However, this argument fails to grapple with the fact that the policy defines ACV to mean "replacement cost of the auto or property less depreciation or betterment." (Dkt. 1-1 at 10). As other federal courts have held, where ACV is defined as "replacement cost minus normal depreciation," it is a plausible interpretation that it includes sales tax. *Wilkerson v. Am. Fam. Ins. Co.*, 997 F.3d 666, 670 (6th Cir. 2021); *see also Ostendorf v. Grange Indem. Ins. Co.*, No. 2:19-CV-1147, 2020 WL 134169, at *3 (S.D. Ohio Jan. 13, 2020) ("It is true that there is no express provision of Grange's insurance policy that requires the payment of sales tax and vehicle fees. But that is not Plaintiff's argument. . . . Plaintiff argues that the promise to pay 'actual cash value' includes sales tax and registration fees because the point of ACV is to cover the full cost of replacing the vehicle. This Court concludes that the term 'actual cash value' is at least ambiguous under the Policy[.]" (internal citation omitted)); *Sos v. State Farm Mut. Auto. Ins. Co.*, 396 F. Supp. 3d 1074, 1081 (M.D. Fla. 2019) ("The Court finds that sales tax and fees are costs an insured is reasonably likely to incur in replacing his leased vehicle, and therefore are components of actual cash value under the Policy."); *Lukes v. Am. Fam. Mut. Ins. Co.*, 455 F. Supp. 2d 1010, 1015 (D. Ariz. 2006) ("The Policy in this case defines 'actual cash value' as 'the amount which it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence' . . . . The Defendant has not cited any authority that

---

procedural prerequisites for seeking such relief. It would be improper for the Court to grant summary judgment to Plaintiff under these circumstances.

suggests that Arizona state courts would construe 'actual cash value,' in the present context, to exclude sales tax.").

Defendant suggests that these cases are not persuasive and should be disregarded by the Court because they were not applying New York law. (*See* Dkt. 20 at 5-6). But Defendant has offered no persuasive argument that the laws of the jurisdictions at issue differ meaningfully from New York law on the key issue—namely, whether the "replacement cost" of a vehicle may reasonably be interpreted to require payment of sales tax.[8] The Court finds the cases cited above persuasive as to this specific argument, and further does not find that this point turns on any vagaries of the state laws at issue.

Moreover, the Court is not persuaded by Defendant's reliance on the policy's definition of loss as somehow restricting the scope of ACV to not include sales tax. Liability under the policy is limited to the ACV of the property "at the time of the loss," (Dkt. 1-1 at 12), but a reasonable interpretation of this language is that it simply addresses the timing of when the replacement cost value should be measured—in other words, not at the time the policy is issued or when the vehicle is procured, but rather at the time of the loss. And the definition of loss under the policy does little to clarify the issue. Loss is defined as "direct and accidental loss of or damage to: (a) the auto, including its

---

[8] Defendant does suggest that these cases are distinguishable because "New York law does not require payment of sales tax on leased vehicles" as opposed to on the lease agreement itself. (Dkt. 20 at 5) (emphasis omitted). But that is not the question at this stage of the proceedings—the question is whether "replacement cost" can reasonably be interpreted to include *all* the costs one would have to expend to obtain a comparable vehicle.

equipment. . .," (*id*. at 10), but this is a circular definition whereby "loss" itself is defined, in part, by "loss." In any event, given that ACV is defined under the policy as replacement cost, the Court cannot conclude that the policy's definition of loss somehow unambiguously eliminates sales tax from the policy's definition of ACV.[9]

Thus, the Court concludes that Plaintiff's interpretation of the policy as including sales tax within the scope of ACV is not unreasonable. At best, the policy is ambiguous as to whether it includes sales tax within the ACV for a total loss leased vehicle, necessitating denial of Defendant's motion to dismiss Plaintiff's breach of contract claim.

## III. Defendant's Argument that Appraisal will be Ripe

In its motion to dismiss, Defendant raises the use of an appraisal to resolve a potential dispute regarding the amount of Plaintiff's loss. (Dkt. 13 at 8). According to Defendant, "[o]n resolution of the legal issue raised by this Motion and if Plaintiff then

---

[9] In *Sigler v. GEICO Casualty Co.*, 967 F.3d 658 (7th Cir. 2020), the Seventh Circuit affirmed the district court's dismissal of plaintiff's claim that he was entitled to recover "sales tax and title and tag transfer fees for a replacement vehicle, though he did not incur these costs." *Id*. at 659. The Seventh Circuit concluded that "[t]he Limit of Liability section of the policy doesn't promise to pay these costs regardless of whether the insured incurs them; it simply describes the *most* that GEICO will pay in the event of a covered loss." *Id*. at 660. However, the Seventh Circuit's ruling in *Sigler* relied upon an Illinois insurance regulation that "specifically addresses when an auto insurer must pay sales tax and title and tag transfer fees in a total-loss claim[.]" *Id*. at 661. That regulation "requires payment of applicable sales tax and title and transfer fees *only* when the insured purchases or leases a new vehicle within a specified time and substantiates that he has incurred these costs[.]" *Id*. (emphasis in original). Due to the existence of this regulation, the Seventh Circuit concluded that the policy at issue in *Sigler* was "not really silent on this subject." *Id*. By contrast, Defendant's express position in this case is that the policy "is silent on sales tax." (Dkt. 13 at 4). *Sigler* is accordingly not on point. *See also Ostendorf*, 2020 WL 134169, at *3 (explaining that the district court's decision in *Sigler* is "an outlier" and that "a number of jurisdictions have reached the opposite result").

challenges the amount of his *loss*, the extrajudicial remedy of appraisal becomes ripe, and GEICO will seek this remedy." (*Id.*). Plaintiff responds that he is only asking the Court to resolve a legal question of whether he is entitled to sales tax, calculated based on a fixed percentage, on his claim for his leased vehicle that was totaled. (Dkt. 19 at 27). In its reply, Defendant again asserts that "once the Court resolves the threshold legal issue, appraisal will be ripe." (Dkt. 20 at 9).

To the extent that Defendant is seeking relief beyond dismissal under Rule 12(b)(6), it has not properly moved for the same. The Court will not resolve matters beyond those appropriately presented for its review.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss (Dkt. 12) is denied. Defendant shall file an answer in accordance with the Federal Rules of Civil Procedure.

SO ORDERED.

                                                                      _____
                                                                      ELIZABETH A. WOLFORD
                                                                      Chief Judge
                                                                      United States District Court

Dated:  March 13, 2024
            Rochester, New York