UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――

JOHN MARCELLETTI, *on behalf of himself
and all others similarly situated*,

                       Plaintiff,

    v.

GEICO GENERAL INSURANCE COMPANY,

                    Defendant.

―――――――――――――――――――――――――

**DECISION AND ORDER**

6:23-CV-06211 EAW CDH

## <u>INTRODUCTION</u>

Plaintiff John Marcelletti ("Plaintiff") brings this putative class action suit against defendant GEICO General Insurance Company ("Defendant" or "GEICO"), asserting a claim for breach of contract based on Defendant's failure to pay sales tax as part of the "Actual Cash Value" for total loss vehicles. (Dkt. 1).

This Decision and Order resolves multiple motions arising out of a discovery dispute between the parties over Defendant's production of internal GEICO documents. The first motion is a motion to compel filed by Plaintiff, which seeks to compel Defendant to produce unredacted copies of certain internal GEICO documents, as well as yet-to-be-produced documents from a separate class action against another GEICO affiliate. (Dkt. 43). The second motion is a motion to seal filed by Defendant, which seeks to seal portions of the internal GEICO documents filed as exhibits by Plaintiff in support of his motion to compel. (Dkt. 51). The third motion is a motion filed by Plaintiff for leave to file a response to Defendant's sur-replies to

Plaintiff's notices of supplemental authority.[1] (Dkt. 76). The fourth motion is a motion filed by Defendant for leave to file a sur-reply to Plaintiff's motion to compel, addressing a statement made by Plaintiff's counsel in the related action *Shiloah v. GEICO Indemnity Company*, Civil Action No. 6:24-cv-6447 (W.D.N.Y.) ("*Shiloah*"), in which the plaintiff and the defendant are represented by the same counsel as this case. (Dkt. 144). For the reasons set forth below, Plaintiff's motion to compel (Dkt. 43) is granted in part and denied in part; Defendant's motion to seal (Dkt. 51) is denied; Plaintiff's motion for leave to file a response to Defendant's sur-replies (Dkt. 76) is granted to the extent discussed herein; and Defendant's motion for leave to file a sur-reply (Dkt. 144) is denied as moot.

## BACKGROUND

This case has been referred to the undersigned for all pre-trial matters excluding dispositive motions. (Dkt. 28; Dkt. 74).

Familiarity with the factual background of this case is assumed and set forth in more detail in prior decisions in the proceeding. (*See, e.g.*, Dkt. 23; Dkt. 115). In brief, Plaintiff was involved in an accident while driving a leased vehicle that was insured under a policy issued by GEICO. (Dkt. 1 at ¶¶ 19-21). Plaintiff alleges that GEICO breached its policy with Plaintiff and other members of the putative class by failing to pay sales tax when settling claims for total loss vehicles. (*Id.* at ¶ 30-32).

The instant motions primarily concern discovery documents related to

---

[1] Defendant also filed two additional motions to seal documents filed in connection with the briefing on Plaintiff's motion to file a response to Defendant's sur-replies. (Dkt. 87; Dkt. 89). Defendant subsequently withdrew these two motions with no opposition by Plaintiff. (*See* Dkt. 129; Dkt. 135).

Plaintiff's motion for class certification. The discovery documents can be broadly categorized as involving (1) internal GEICO documents and (2) documents filed in *Lewis v. Gov't Emps. Ins. Co.*, No. 22-3449 (3d Cir.) and *Lewis v. Gov't Emps. Ins. Co.*, No. 18-CV-05111 (D.N.J.) (collectively, "*Lewis*"). Plaintiff seeks to compel production of unredacted copies of the internal GEICO documents—which Defendant has only produced in redacted form—and copies of the *Lewis* documents—which Defendant has objected to producing in any form.

## I.     <u>Plaintiff's Motion to Compel</u>

### A.     <u>Internal GEICO Documents</u>

The first set of internal GEICO documents at issue is GEICO's "internal customer log relating to Plaintiff's individual total loss claim" (Plaintiff's "claim file"). (Dkt. 44-1 at ¶ 6). Plaintiff includes with his motion to compel the copy of his claim file produced by Defendant, which reflects that the documents have been heavily redacted. (*See* Dkt. 44-3). As described in Defendant's redaction log, the reasons for the redactions include: "Irrelevant healthcare information; information regarding unrelated third parties/other claimants; unrelated coverage"; "A/C Privilege and/or Work Product"; and "Confidential/PII"; or some combination thereof. (Dkt. 56-1 at 3-6). According to Plaintiff's counsel, after multiple meet and confers, defense counsel "agreed Defendant would produce unredacted copies of documents comprising Plaintiff's claim file," but has yet to produce those documents. (Dkt. 44-1 at ¶¶ 26, 31). Defense counsel, however, asserts that "[a]s discussed with Plaintiff, GEICO re-reviewed its redactions to Plaintiff's claim file documents . . . [which] confirmed that

all of the redactions were appropriate under the rules as they relate either to unrelated third parties/other claimants, healthcare information, personally identifying information for others, or unrelated coverage." (Dkt. 56 at 7 n.1).

The second set of internal GEICO documents at issue includes eight GEICO claims adjuster handbooks. (Dkt. 44-1 at ¶ 15). Plaintiff has included representative pages from the copies of the handbooks produced by Defendant, which reflect that they have been significantly redacted. (*See* Dkt. 44-7; Dkt. 44-8; Dkt. 44-9). Generally, aside from some headings and subheadings, most of the content in these representative pages has been completely redacted.[2] The content that has not been redacted appears to have been left unredacted based on Defendant's determination that it was relevant to this case. For example, Plaintiff has included a portion of the glossary of one handbook in which every term and definition is redacted except for "ACV or Actual Cash Value"—a term at issue in this case. (*See* Dkt. 44-7 at 52). Much of the unredacted content is also devoid of unredacted surrounding content, such that its use as evidence or discovery material appears highly limited. Defendant's redaction log describes the reasons for the handbook redactions as "Irrelevant" and "Unrelated to adjustment of total loss claims." (Dkt. 56-1 at 6-8). Defendant's position is that Plaintiff's claim in this case concerns "solely . . . the payment of sales tax on total loss vehicles under New York law and [Plaintiff's] New York Insurance Policy with GEICO General Insurance Company." (Dkt. 56 at 6-7). Accordingly, in its view, the redacted handbook content has no relevance and Plaintiff has not met his burden

---

[2]    Plaintiff notes that, by way of an example, one of the handbooks is 130 pages, and 120 of those 130 pages are redacted. (Dkt. 44-1 at ¶ 16).

of demonstrating otherwise. (*See id.*).

The third set of internal GEICO documents at issue constitutes GEICO's records retention schedule. (Dkt. 44-1 at ¶ 21). Plaintiff has again included the copies of the records retention schedule produced by Defendant, which reflect that the substantive content describing GEICO's retention policy has largely been redacted. (*See* Dkt. 44-11). The only unredacted information is the retention policy regarding "Claim Files and Records" (*i.e.*, how long those records must be kept); a list of documents that could constitute "Claims records"; a list of retention codes (*e.g.*, "IND" denotes that the record should be kept for an indefinite time); and a generic description of the retention schedule's revision history. (*See id.*). Defendant's redaction log describes the reason for the retention schedule redactions as "Irrelevant" and "Unrelated to adjustment of total loss claims." (Dkt. 56-1 at 8-9). Plaintiff argues that these redactions "interfere[e] with Plaintiff's ability to identify potential witnesses" by redacting "possible custodial information." (Dkt. 44 at 11). At oral argument, Plaintiff added that he intends to utilize the retention schedule to know what records have been kept or destroyed, and to reference the schedule in the event that Defendant claims certain documents are not in its possession.

### B. *Lewis* Documents

*Lewis* is a class action in the District of New Jersey against a different GEICO affiliate, in which the Third Circuit affirmed the district court's certification of a class based on that GEICO affiliate's failure to reimburse class members for taxes and fees necessary to replace total loss vehicles. *See Lewis v. Gov't Emps. Ins. Co.*, 98 F.4th

452, 456 (3d Cir. 2024).

Plaintiff's first set of document requests in the present case asked for: "[a]ll briefs and appendices filed by any party in the Third Circuit Court of Appeals in the matter of *Lewis v. Government Employees Insurance Co.*, No. 22-3449, in unredacted form, including all such briefs and appendices filed under seal"; and "[a]ll Documents filed by any party in connection with plaintiffs' motion for class certification and any reconsideration thereof in the United States District Court for the District of New Jersey in the matter of *Lewis v. Government Employees Insurance Co.*, 1:18-cv-05111, in unredacted form, including all Documents filed under seal[, including] motions, briefs, declarations, deposition transcripts, and other discovery material."[3] (Dkt. 44-2 at 3-4).

Defendant objected to these requests on the grounds that: (1) the documents sought are not relevant, as *Lewis* involved insurance policies governed by New Jersey law; (2) the documents are confidential, were filed under seal, and are likely subject to the protective order entered by the district court in *Lewis*; and (3) production of the documents would be unduly burdensome. (*See* Dkt. 44-6 at 13-14; Dkt. 44-1 at ¶¶ 14, 28; Dkt. 56 at 9-13).

Plaintiff argues that the *Lewis* documents are relevant to his motion for class

---

[3]    Since his initial document request, Plaintiff appears to have narrowed the scope of the documents sought. For example, Plaintiff now states that he "is seeking documents and information pertaining to the *Lewis* plaintiff's claim for sales tax." (Dkt. 44 at 20). Plaintiff also argues throughout the briefing on the motion to compel that the protective order in *Lewis* does not restrict Defendant from sharing materials that were produced *by GEICO*. (*See* Dkt. 44 at 22; Dkt. 60 at 13-14). These conditions are plainly inconsistent with Plaintiff's initial requests, which were essentially for *all* documents filed by *all* parties.

certification. According to him, because the Third Circuit relied on these documents in finding that the *Lewis* plaintiffs "presented evidence that GEICO systematically underpaid taxes . . . and that a review of claim files and other sources could identify insureds whose settlements did not include taxes," *Lewis*, 98 F.4th at 462, the documents could refute Defendant's affirmative defense that "[t]his suit may not be properly maintained as a class action, because, among other reasons . . . the putative class is not ascertainable and its members are not identifiable" (Dkt. 26 at 17). (Dkt. 44 at 20-21; Dkt. 60 at 12-13). Plaintiff further argues that the protective order in *Lewis* does not restrict Defendant from producing GEICO's own materials. (Dkt. 44 at 22-23; Dkt. 60 at 13-14).

## II.   **Defendant's Motion to Seal**

Plaintiff filed his motion to compel on September 6, 2024. (Dkt. 43). Defendant thereafter moved on September 20, 2024, to seal portions of the internal GEICO documents that Plaintiff filed as Exhibits 6, 7, 8, and 10 to his motion to compel.[4] (Dkt. 51). The documents Defendant seeks to seal are portions of GEICO claims adjuster handbooks (Dkt. 44-7; Dkt. 44-8; Dkt. 44-9[5]) and GEICO's records retention

---

[4]     After Defendant filed its motion to seal, Plaintiff filed his reply brief in support of his motion to compel, in which he refers to and excerpts, in redacted form, some of the documents that Defendant seeks to seal. (*See* Dkt. 60 at 8). Defendant subsequently filed a notice stating that its motion to seal "applies equally to Plaintiff's references to those same Confidential documents in his Reply Memorandum of Law in Support of his Motion to Compel." (Dkt. 91).

[5]     Docket No. 44-9 includes two documents. (*See* Dkt. 44-9 at 2-3). Defendant identifies the documents it seeks to seal by Bates number. Defendant requested to seal the second document, Bates numbered GEICO-MARCELLETTI0001095, but not the first document, Bates numbered GEICO-MARCELLETTI0001054. (*See* Dkt. 52 at 8-9). The latter document is fully redacted, so it is unclear if Defendant

schedule (Dkt. 44-11).[6] These documents were designated by Defendant as confidential pursuant to the Stipulated Protective Order and Confidentiality Agreement ("Protective Order") entered by the Court on June 18, 2024. (Dkt. 37). Defendant argues that the handbooks and retention schedule warrant sealing because they are not judicial documents and because "they contain confidential and proprietary information pertaining to GEICO's training practices, claim-handling practices, and internal processes and procedures." (*See* Dkt. 52 at 5, 7). In support of its motion to seal, Defendant includes a sworn declaration by Kevin Costigan, a GEICO corporate representative, who states that "[a]llowing even portions of the . . . documents to be publicly disclosed creates a severe risk that a competitor could gain access to GEICO's confidential and proprietary business practices, which could harm GEICO's competitive standing in the auto insurance industry." (Dkt. 52-2 at ¶ 9). Plaintiff has not filed any opposition to Defendant's motion to seal.

As discussed above, Plaintiff filed the documents that are the subject of the motion to seal to demonstrate to the Court the extent of Defendant's redactions and

---

purposefully excluded it from the motion to seal. Notwithstanding this issue, for ease of reference, the Court refers to the documents Defendant seeks to seal by docket number rather than Bates number.

[6]    When Plaintiff's counsel filed these documents as exhibits, he inadvertently failed to file them under seal. Defense counsel later notified the Court that the documents had been publicly available for over four months, and the Court temporarily sealed the documents pending resolution of this motion. As it has previously explained to the parties, the Court has no control over any persons or third-party websites that may have accessed and saved these documents during the time they were accessible on the public docket. In addition, contrary to Plaintiff's counsel's suggestion at oral argument, there is no indication that the documents were filed publicly by the Clerk of Court's Office, nor does the docket support this claim.

the need for an order compelling Defendant to produce unredacted copies of the documents. Unredacted copies of the handbooks and retention schedule have never been presented to the Court. Accordingly, Defendant seeks to seal the significantly redacted copies of the documents filed by Plaintiff, and the Court makes its determination as to whether to seal them solely on the basis of those significantly redacted copies. In other words, the question before the Court is not whether unredacted versions of these documents should be publicly filed.

### III.   Plaintiff's Motion for Leave to File a Response

After the briefing on Plaintiff's motion to compel was completed, Plaintiff filed two notices of supplemental authority, each apprising the Court of a new case in further support of his motion to compel. (Dkt. 66; Dkt. 68). The two cases are *Cleary v. Kaleida Health*, No. 1:22-cv-00026(LJV)(JJM), 2024 WL 4901952 (W.D.N.Y. Nov. 27, 2024) and *Shell Trademark Mgmt. B.V. v. Individuals & Bus. Entities Identified on Schedule A*, No. 23-CV-07653-JMA-LGD, 2024 WL 4854681 (E.D.N.Y. Nov. 21, 2024). Plaintiff's notices also include brief commentary on how these decisions support his position that Defendant's redactions based on relevancy are impermissible.

Though the Court did not request briefing on Plaintiff's notices of supplemental authority, Defendant filed a response to each. (Dkt. 72; Dkt. 73). The first response alleges that one of Plaintiff's attorneys, Edmund A. Normand, violated the protective orders entered in three separate cases by emailing a GEICO corporate representative, on the eve of her deposition in this case, transcripts that were designated as

confidential under the protective orders entered in those three cases. (Dkt. 72 at 2). Defendant states that, pursuant to those protective orders, Mr. Normand, who participated as counsel in the three cases, was not allowed to use the transcripts outside of those litigations. (*Id.*). Defendant also alleges that Mr. Normand "sent the Confidential transcripts to all of Plaintiff's counsel and others in clear violation of three courts' [protective] orders.[7] (*Id.*). Plaintiff subsequently filed his motion for leave to file a response to what he characterizes as Defendant's "unauthorized sur-replies." (Dkt. 76). Plaintiff argues that the Court should permit him to file a response so Plaintiff can have an opportunity to respond to the new factual and legal arguments raised by Defendant in its two responses. (Dkt. 77 at 2-4).

## IV.    <u>Defendant's Motion for Leave to File a Sur-Reply</u>

The Court heard oral argument in this case on May 20, 2025, as to the three foregoing motions. (Dkt. 135). But on June 5, 2025, Defendant filed a motion for leave to file a sur-reply to Plaintiff's motion to compel. (Dkt. 144). Defendant asserts that its submission of a sur-reply is warranted because "Plaintiff's Counsel has represented in a submission to the Court in [*Shiloah*] that Plaintiff Marcelletti has now apparently changed his position with respect to his request for production of the *Lewis* documents[.]" (Dkt. 145 at 4). Defendant points to Plaintiff's counsel's declaration in support of the *Shiloah* plaintiff's motion for appointment of co-lead

---

[7]    At oral argument, the parties clarified that Mr. Normand's co-counsel were copied on the email sending the transcripts to the GEICO representative. Co-counsel for Plaintiff, Joseph N. Kravec, Jr., attributed this mistake to Mr. Normand's secretary and represented that he did not click on the file share link for the transcripts and deleted the email.

interim class counsel, wherein Plaintiff's counsel states

> In the related *Marcelletti* action, Proposed Co-Lead Interim Class
> Counsel promptly initiated discovery and worked expeditiously to obtain
> the information and documents needed to move for class certification,
> including engaging in extensive meet and confers, as well as motion
> practice concerning various discovery disputes. The parties exchanged
> voluminous written discovery, conducted depositions, including of
> Plaintiff Marcelletti, GEICO General's Rule 30(b)(6) corporate
> designees, and Plaintiff's economist who submitted a report in support
> of Plaintiff Marcelletti's motion for class certification. *Plaintiff
> Marcelletti has now completed fact discovery necessary for class
> certification.*

(*Shiloah*, Dkt. 59-1 at ¶ 8 (W.D.N.Y. May 30, 2025)) (emphasis added).

Defendant argues that because Plaintiff's sole identified basis for obtaining the
*Lewis* documents was their relevance to Plaintiff's motion for class certification, the
foregoing statement demonstrates that Plaintiff's motion to compel production of the
*Lewis* documents is moot. (Dkt. 145 at 4-5). Plaintiff, however, claims that this
statement merely refers to the fact that, pursuant to the Second Amended Scheduling
Order in this case, the period of class focused non-expert fact discovery ended on
January 6, 2025. (Dkt. 151 at 5; *see* Dkt. 70 at 1). Plaintiff also argues that the Court
should still rule on the merits of the motion because the plaintiff in *Shiloah* has
requested the same *Lewis* documents and the GEICO defendant in that case has
refused to produce them on the same grounds as here. (Dkt. 151 at 8). Defendant
replied. (Dkt. 156).

## DISCUSSION

### I.    Plaintiff's Motion to Compel and Defendant's Motion For Leave to File a Sur-reply

#### A.    Legal Standard on Motion to Compel

Under Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to a party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "Information is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 47 (E.D.N.Y. 2018) (quotation omitted). "Proportionality focuses on the marginal utility of the discovery sought. . . . [T]he greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Vaigasi v. Solow Mgmt. Corp.*, No. 11-CIV-5088-RMB-HBP, 2016 WL 616386, at *14 (S.D.N.Y. Feb. 16, 2016) (citations omitted). The 2015 amendment to Rule 26 "constitute[d] a reemphasis on the importance of proportionality in discovery" and "exhort[s] judges to exercise their preexisting control over discovery more exactingly." *Id.* at 13 (quotation omitted).

Rule 34 provides that "[a] party may serve on any other party a request to produce documents within the scope of Rule 26(b)." *Christine Asia Co. v. Alibaba Grp. Holding Ltd.*, 327 F.R.D. 52, 53 (S.D.N.Y. 2018) (citing Fed. R. Civ. P. 34(a)). If a party fails to produce documents requested pursuant to Rule 34, then the party seeking discovery may move for an order to compel production. Fed. R. Civ. P.

37(a)(3)(B)(iv).

"In reviewing a motion to compel, the district court must determine whether the moving party has established the relevance of the information sought and its proportionality in relation to the needs of the case." *Offor v. Mercy Med. Ctr.*, No. 21-2115-CV, 2023 WL 2579040, at \*4 (2d Cir. Mar. 21, 2023), *cert. denied*, 144 S. Ct. 87 (2023). "If this burden is met, the party resisting discovery then bears the burden of showing why discovery should be denied." *CNY Fair Hous., Inc. v. WellClover Holdings LLC*, No. 5:21-CV-361 (BKS/ML), 2024 WL 4772741, at \*4 (N.D.N.Y. May 2, 2024) (quotation and alteration omitted). Motions to compel are left to the sound discretion of the Court. *Christine Asia Co.*, 327 F.R.D. at 54.

With respect to redacting documents based on relevancy, "[t]he weight of authority in this Circuit goes against allowing a party to redact information from admittedly responsive and relevant documents based on that party's unilateral determinations of relevancy." *Id.* (quotation omitted). Courts have found this to be especially true where a confidentiality stipulation and order is in place. *See Durling v. Papa John's Int'l, Inc.*, No. 16-CIV-3592-CS-JCM, 2018 WL 557915, at \*9 (S.D.N.Y. Jan. 24, 2018). Relevancy redactions are typically disallowed for reasons including:

> 1) a party should not be permitted to determine whether portions of a document being produced are irrelevant; 2) relevance redactions may eliminate context needed for an adversary to understand the unredacted portions of a document; 3) where a stipulated protective order is in place, the producing party's information is protected; and 4) redactions take time and are expensive and therefore inconsistent with Rule 1's mandate that cases be administered so as to promote a "just, speedy, and inexpensive" resolution of the case.

*Kaiser Aluminum Warrick, LLC v. US Magnesium LLC*, No. 22-CV-3105-JGK-KHP,

2023 WL 2482933, at *1 (S.D.N.Y. Feb. 27, 2023).

Nevertheless, some courts do permit relevancy redactions. However, they generally do so pursuant to either some form of discovery protocol—whether agreed upon by the parties or imposed by the court—that limits the redacting party's discretion, or after reviewing the unredacted documents *in camera*.[8] *See, e.g., Satanic Temple, Inc. v. Newsweek Mag. LLC*, No. 22-CIV-1343-MKV-SLC, 2023 WL 8827563, at *2 (S.D.N.Y. Dec. 21, 2023) (conducting *in camera* review to determine whether redactions removed relevant information or information that would place relevant information in context); *Kaiser Aluminum Warrick*, 2023 WL 2482933, at *2 (requiring parties to seek advance permission from the court before making relevancy redactions); *In re Bystolic Antitrust Litig.*, No. 20-CV-5735 (LJL), 2021 WL 878568, at *2 (S.D.N.Y. Mar. 9, 2021) (requiring redacting party to provide receiving party with a statement explaining the general nature of the redacted information and the reason for its redaction that is sufficient for the receiving party to make an objection to the redaction, and not permitting redacting party to remove content that places responsive information in context); *see also Engage Healthcare Commc'ns, LLC v. Intellisphere, LLC*, No. 12-CV-00787-FLW-LHG, 2017 WL 3624262, at *3 (D.N.J. Apr. 26, 2017) (surveying federal caselaw and finding that cases permitting the redaction

---

[8]    Another line of cases treats relevancy redactions as analogous to a protective order under Rule 26(c) and requires a finding of good cause based on a need to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. *See, e.g., CNY Fair Hous., Inc.*, 2024 WL 4772741, at *6; *Trellian Pty, Ltd. v. adMarketplace, Inc.*, No. 19-CIV-5939-JPC-SLC, 2021 WL 363965, at *3 (S.D.N.Y. Feb. 3, 2021); *Howell v. City of New York*, No. CV06-6347(ERK)(VVP), 2007 WL 2815738, at *2 (E.D.N.Y. Sept. 25, 2007).

of irrelevant information generally "involve either a pre-existing agreement among the parties or a decision by the Court after-the-fact"), *adopted*, 2017 WL 3668391 (D.N.J. Aug. 23, 2017).

With respect to the production of documents from another case, "numerous courts have found that requests for 'all' documents produced in another litigation . . . are inherently overbroad requests requiring the Court to considerably scale back the information that a producing party must produce from another litigation or deny it entirely on the ground that a party must do its own work." *United States v. Anthem, Inc.*, No. 20-CV-2593-ALC-KHP, 2024 WL 1116276, at *4 (S.D.N.Y. Mar. 13, 2024) (collecting cases); *see also Fontana v. Grove Sch., Inc.*, No. 3:22-CV-01180 (SVN), 2023 WL 5289557, at *1 (D. Conn. Aug. 17, 2023) ("Asking for all documents produced in another matter is not generally proper. The propounding party cannot meet its burden to establish relevance, as the propounding party is not in a position to even know what they are actually asking for.") (quotation omitted). While some courts "grant motions to compel discovery from another case when the requests are narrowly tailored to request discovery from another case that is essentially identical," *In re Exactech Polyethylene Orthopedic Prods. Liab. Litig.*, 347 F.R.D. 572, 583 (E.D.N.Y. 2024), the appropriateness of such discovery ultimately depends on the circumstances of each case. *In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, No. 21 C 305, 2023 WL 4181198, at *7 (N.D. Ill. June 26, 2023). The requesting party must still make a threshold showing of relevance. *See King Cnty. v. Merrill Lynch & Co.*, No. C10-1156-RSM, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011) ("It may very well be that

each and every document produced in the government investigations is relevant to Plaintiff's claims. However, Plaintiff must make proper discovery requests, identifying the specific categories of documents sought, in order to obtain them—and each category must be relevant to its claims and defenses.")

**B.    Application**

1.    **Relevancy Redactions**

This Court agrees generally with those courts that have found relevancy redactions to be appropriate under certain circumstances. As the court in *Kaiser Aluminum* observed, "allowing a party to determine whether a document is relevant is standard discovery protocol. . . . There is no reason that this Court can discern to find that a party is less able to make good faith relevance determinations as to portions of documents than as to whole documents." 2023 WL 2482933, at *2. However, even that court's position (which sits on the permissive end of the spectrum with respect to this issue) was conditional, as it noted that redactions "may be appropriate" where they are "consistent with Rule 1 and Rule 26 and do not deprive the other party of context," and where the redacting party "*seeks advance permission from the Court* to make them." *Id.* (emphasis in original); *see also Gen. Motors LLC v. Ashton*, No. CV-20-12659-RBK-EAP, 2023 WL 1765711, at *4 (D.N.J. Feb. 3, 2023) ("Although federal courts have generally found that parties may not unilaterally redact irrelevant pieces of information, certain circumstances may justify leave to redact irrelevant portions of otherwise responsive documents.").

Likewise, the caselaw that Defendant cites for the proposition that "[c]ourts in

this District have . . . long recognized it is appropriate to redact irrelevant information in the production of otherwise-responsive documents" (Dkt. 56 at 7) demonstrates that those courts did not give the redacting parties unfettered discretion to determine relevance. Where the relevance of redacted material was in dispute, those courts either reviewed unredacted copies of the material *in camera* to independently confirm that they were not relevant, *see Woodward v. Mullah*, No. 08-CV-463AM, 2009 WL 4730311, at *3-4 (W.D.N.Y. Dec. 4, 2009); *Richir v. Vill. of Fredonia, N.Y.*, No. 05CV76S, 2008 WL 941773, at *4 (W.D.N.Y. Apr. 4, 2008), or required the redacting party to specifically explain the countervailing interest necessitating nondisclosure. *See Delacruz v. Bennett*, No. 03-CV-6455L, 2006 WL 1389770, at *1 (W.D.N.Y. May 19, 2006).

Here, Defendant, despite citing the foregoing cases and *Kaiser Aluminum*, does not acknowledge the need for any procedural safeguards and instead asserts unfettered discretion to redact material that it deems irrelevant. The Court finds there is no support for such a position. Defendant did not seek advance permission from the Court before producing redacted documents, which may have obviated the need for motion practice and the multiple attendant disputes that have arisen in connection with Plaintiff's motion to compel. Defendant's concerns about Plaintiff's use of materials designated as confidential do not justify making unilateral redactions without leave of the Court or any other procedural safeguards. Moreover, Defendant has not provided the Court with unredacted copies of the internal GEICO documents for *in camera* review, or otherwise provided—with one exception related

to Plaintiff's claim file, discussed further below—a specific explanation of the countervailing interests that necessitate nondisclosure. And significantly, even after questioning at oral argument, defense counsel could not affirmatively state that in evaluating the relevance of any redacted material, Defendant considered, as it must under Rule 26(b)(1), both Plaintiff's claims *and* its own defenses. Under these circumstances, the Court cannot blanketly condone the redactions made by Defendant. Instead, and in accordance with these findings, the Court addresses each set of redacted internal GEICO documents as follows.

### a.    Plaintiff's Claim File

Plaintiff's motion to compel as to his unredacted claim file is denied. Defendant has adequately identified the categories of redactions made to these documents and the Court finds those categories to be appropriate. Specifically, Defendant has stated in its brief and at oral argument that the redacted material in Plaintiff's claim file relates to a third-party property damage claim and a personal injury claim, as well as protected health information and personally identifiable information. (*See* Dkt. 56 at 7 n.1). Defendant has thus adequately provided a specific, legitimate countervailing interest necessitating nondisclosure of the redacted portions of Plaintiff's claim file.

In addition, in reviewing the redacted copy of the claim file that has been produced to Plaintiff (*see* Dkt. 44-3), the Court finds that the document is not so significantly redacted as to render it incomprehensible, lacking in necessary context, or useless as evidence. *See Beverage Distributors, Inc. v. Miller Brewing Co.*, No. 2:08-

CV-1112, 2010 WL 1727640, at *5 (S.D. Ohio Apr. 28, 2010) (finding courts have approved relevancy redactions where "the content of the redactions was readily apparent" and "the redactions involved a single type of document and one or two discrete categories of allegedly irrelevant information").

### b.    Claims Adjuster Handbooks

Plaintiff's motion to compel as to the unredacted copies of the eight claims adjuster handbooks is granted. Unlike Plaintiff's claim file, the representative pages that Plaintiff has included with his motion demonstrate that the handbooks have been so significantly redacted that they are incomprehensible and useless as evidence. Moreover, Defendant has not clearly demonstrated to the Court that it considered the full scope of issues in this case, including those raised by its own defenses, when making its redactions. While Defendant repeatedly notes that Plaintiff only alleges a single claim for breach of contract, the Court finds that the numerous affirmative defenses asserted by Defendant (*see* Dkt. 26) have significantly expanded the scope of relevant discovery. Furthermore, many of the redacted sections of the handbooks appear to be relevant to these affirmative defenses. At least two of the eight handbooks are already publicly available in full, unredacted form, and have been publicly available on the docket in this case for over five months. (*See* Dkt.77-1 at 4; Dkt. 78-1; Dkt. 78-2). After comparing the publicly available, unredacted handbooks with their redacted counterparts produced in this case, Plaintiff has made a showing that Defendant has likely redacted relevant information. (*See, e.g.,* Dkt. 78 at ¶¶ 17-18).

The Court is also not persuaded by Defendant's suggestion at oral argument that the other six handbooks still need to be redacted because of significant revisions between them. Defendant merely claims that because GEICO issued successive editions of the handbook, that, in itself, is evidence of significant revisions, but otherwise puts forward no specific evidence of any differences. Additionally, it conceded that it did not actually know the extent of any revisions. On such a basis, the Court cannot conclude that the six non-publicly available handbooks warrant redactions as between the parties in discovery.

### c.    <u>Records Retention Schedule</u>

Defendant is directed to provide an unredacted copy of GEICO's records retention schedule (Dkt. 44-11) to the Court for an *in camera* review. After reviewing the redacted documents that Defendant has produced, and considering the parties' limited arguments regarding their relevance, the Court finds that the record is not developed enough for the Court to evaluate the propriety of either allowing Defendant to redact these documents or compelling it to produce them in unredacted form. The Court will reserve ruling on Plaintiff's motion to compel as to the record retention schedule until it has conducted an *in camera* review.

### 2.    *Lewis* <u>Documents</u>

The parties' dispute over the *Lewis* documents centers on whether the documents are relevant to this case, whether the protective order entered by the district court in *Lewis* limits Defendant's ability to produce the documents, and whether production of the documents would be unduly burdensome.

As to relevance, Plaintiff argues that the *Lewis* documents would refute Defendant's affirmative defense that the putative class in this case is not ascertainable. *See, e.g.*, *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 538 (E.D.N.Y. 2017) ("The Court of Appeals for the Second Circuit has recognized a fifth pre-condition to class certification: the implied requirement of ascertainability. For a class to be ascertainable . . . the class definition must, first, be based on objective criteria and, second, be administratively feasible such that class members can be identified without conducting a mini-hearing on the merits of each case.") (quotations and citations omitted). Plaintiff further asserts that "materials produced in other litigation is [sic] generally discoverable where there is substantial similarity between the actions." (Dkt. 44 at 19) (citing *Carter-Wallace, Inc. v. Hartz Mountain Indus., Inc.*, 92 F.R.D. 67 (S.D.N.Y. 1981)). Defendant argues that "even if Plaintiff obtained any evidence relied upon in *Lewis*, that evidence would be of no use in any motion for class certification in this case," because such evidence would be "specific to the certification of a class of plaintiffs with New Jersey policies and under New Jersey law," and would "not actually tend to prove whether the putative New York class . . . satisfies any of the Rule 23 prerequisites to class certification." (Dkt. 56 at 10).

While Plaintiff fails to articulate to the Court specifically what documents from *Lewis* he is now seeking, the Court understands his current request as essentially seeking the claim files for the *Lewis* class members. But even if Plaintiff has narrowed the scope of his original facially overbroad request for *all* documents from *Lewis*, he has failed to establish that the *Lewis* class members' claim files would be more than

marginally relevant and therefore proportional to the needs of this case.

The purported relevance of these documents is specifically premised upon (1) the Third Circuit's finding that the *Lewis* plaintiffs "presented evidence that GEICO systematically underpaid taxes . . . and that a review of claim files and other sources could identify insureds whose settlements did not includes taxes," and (2) Plaintiff's assertion that "the types of records and data GEICO uses in New York are undoubtedly the same or materially the same as used in New Jersey." (Dkt. 44 at 20-21) (quoting *Lewis*, 98 F.4th at 462). The Court, however, cannot discern how these facts make the *Lewis* plaintiffs' claim files relevant. Rather, it seems to the Court that these facts, accepted as true for present purposes, merely tend to support the proposition that the claim files of the putative class members *in this case* may be able to demonstrate ascertainability—*i.e.*, the claim files could identify which New York insureds did not receive sales tax as part of their settlement for total loss claims. To this extent, the Court agrees with Defendant that the *Lewis* plaintiffs' claim files would have little relevance to Plaintiff's motion for class certification. Instead, the relevant information here would be the claim files of the putative class members in this case, taken together with the persuasive authority of the Third Circuit's decision in *Lewis* and the purported similarity between the claim files GEICO maintains in New Jersey and New York. Accordingly, while the claim files from *Lewis* may be relevant conceptually, Plaintiff has not explained how the information obtained from the production of the actual claim files would be relevant, particularly given the burden on Defendant of having to produce presumably voluminous documents. The

Court therefore finds that production of the *Lewis* documents is not proportional to the needs of this case.

For these reasons, this case is distinguishable from *Carter-Wallace*, which Plaintiff primarily relies on. In that case, the plaintiff sought to compel deposition transcripts from another litigation involving similar allegations against the same defendant, who resisted, in part, on the grounds that the plaintiff should have to re-depose all the witnesses. 92 F.R.D. at 69. The court concluded that Rule 1's mandate of a "'speedy and inexpensive determination' of this action would be confounded by a requirement that [the plaintiff] conduct the same numerous, lengthy depositions" when transcripts from the other litigation "might indicate that certain witnesses need not be questioned and might help focus and thereby shorten the inquiry directed to others." *Id.* at 69-70.

Here, having Defendant produce the claim files of the *Lewis* plaintiffs would not prevent duplicative or wasteful discovery, and would not otherwise reduce any burden or expense. The *Lewis* plaintiffs' claim files do not obviate Plaintiff's need to show that analogous information is present in the claim files of the putative class members in this case. In addition, production of the *Lewis* plaintiffs' claim files will not help focus Plaintiff's inquiry. Plaintiff already asserts that the *Lewis* claim files are "materially the same as the records and data that GEICO maintains for putative class members in this case." (*See* Dkt. 61 at ¶ 7). It is unclear then what additional relevant information would be gleaned from production of the *Lewis* claim files. Lastly, even if the court in *Carter-Wallace* looked at whether the discovering party

was seeking material from another litigation that was "substantially similar," Plaintiff still needs to meet his burden of showing, in the first instance, that the materials sought are relevant and proportional. (*See* Dkt. 60 at 13) (Plaintiff arguing that the legal standard for discovering materials from other litigation is whether the actions are "substantially similar").

Plaintiff's motion to compel is therefore denied as to production of the *Lewis* documents. Because the Court's decision on this issue is based on the grounds of relevance and proportionality, the Court need not address to what extent the protective order in *Lewis* would limit Defendant's ability to produce documents from that case. Furthermore, because the Court denies Plaintiff's motion to compel production of the *Lewis* documents on the merits, the Court need not consider Defendant's proposed sur-reply regarding a statement made by Plaintiff's counsel in *Shiloah*. Defendant's motion for leave to file a sur-reply to Plaintiff's motion to compel (Dkt. 144) is therefore denied as moot.

## II.  **Defendant's Motion to Seal**

### A.  **Legal Standard**

"Both the common law and the First Amendment accord a presumption of public access to judicial documents." *United Pool Distribution, Inc. v. Custom Courier Sols., Inc.*, No. 22-CV-06314-FPG, 2024 WL 2979365, at *1 (W.D.N.Y. June 13, 2024). "Therefore, when a party moves to seal a document, courts must engage in a three-step analysis to determine whether the document should be sealed." *Id.*

At the first step, "the court determines whether the record at issue is a judicial

document—a document to which the presumption of public access attaches." *Olson v. Major League Baseball*, 29 F.4th 59, 87 (2d Cir. 2022) (quotation omitted). "A document is 'judicial' when it is 'relevant to the performance of the judicial function and useful in the judicial process.'" *In re New York City Policing During Summer 2020 Demonstrations*, 635 F. Supp. 3d 247, 251 (S.D.N.Y. 2022) (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995)). "A document is . . . relevant to the performance of the judicial function if it would reasonably have the tendency to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *Id.* (quoting *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019)).

At the second step, "[i]f a court determines the record at issue is a 'judicial document,' a determination that thereby attaches the common law presumption of public access to that record, it must next determine the particular weight of that presumption of access for the record at issue." *Olson*, 29 F.4th at 87. "'[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'" *Id.* at 87-88 ((quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)).

"Courts determine the weight of the presumption of access . . . on a 'continuum' of importance." *In re New York City Policing*, 635 F. Supp. 3d at 252 (citing *Amodeo*, 71 F.3d at 1049 ("information will fall somewhere on a continuum from matters that

directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance")). Documents filed in connection with a discovery motion generally fall in the middle of the continuum and are entitled only to a modest presumption of access. *CRC Ins. Servs., Inc. v. Suh*, No. 22-CV-9528 (AT) (JW), 2025 WL 560749, at *2 (S.D.N.Y. Feb. 19, 2025); *see also Brown*, 929 F.3d at 50 ("Although a court's authority to oversee discovery . . . constitutes an exercise of judicial power, we note that this authority is ancillary to the court's core role in adjudicating a case. Accordingly, the presumption of public access in filings submitted in connection with discovery disputes . . . is generally somewhat lower than the presumption applied to material introduced at trial, or in connection with dispositive motions[.]"). But even where a motion to seal concerns a discovery document for which the presumption of public access is modest, "a court must still articulate specific and substantial reasons for sealing such material, [though] the reasons usually need not be as compelling as those required to seal summary judgment filings." *Id.*

At the third step, "once the weight of the presumption has been assessed, the court is required to 'balance competing considerations against it.'" *Olson*, 29 F.4th at 88 (quoting *Amodeo*, 71 F.3d at 1050). One such consideration is "the possibility of competitive harm to an enterprise if confidential business information is disclosed." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MC-2542 (VSB), 2023 WL 196134, at *3 (S.D.N.Y. Jan. 17, 2023), *reconsideration denied*, WL 3966703 (S.D.N.Y. June 13, 2023); *see also United Pool Distribution, Inc.*, 2024 WL 2979365, at *1 (noting that courts in this Circuit routinely seal documents that

contain confidential and proprietary technical, financial, business, third party and/or trade secret information). "Although the protection of sensitive, confidential, or proprietary business information is a countervailing interest that can militate in favor of sealing, conclusory statements that documents contain confidential business information are insufficient to justify sealing." *TileBar v. Glazzio Tiles*, 723 F. Supp. 3d 164, 209 (E.D.N.Y. 2024) (quotation and alteration omitted). "Rather, the moving party must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection." *Id.* (quotation and alteration omitted).

"The burden of demonstrating that a document submitted to the court should be sealed rests on the party seeking such action[.]" *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997). "Deciding whether to accept judicial documents under seal is a wholly separate inquiry from deciding whether to maintain the confidentiality of documents disclosed between parties in discovery." *In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis With Kinectiv Tech. & VerSys Femoral Head Prods. Liab. Litig.*, No. 18-MC-2859 (PAC), 2021 WL 1625390, at *1 (S.D.N.Y. Apr. 27, 2021). "[I]t is well-established that confidentiality agreements alone are not an adequate basis for sealing and material designated as Confidential by a protective order might not come overcome the presumption of public access once it becomes a judicial document." *Thomas v. ConAgra Foods, Inc.*, No. 6:20-CV-06239-EAW-MJP, 2023 WL 11984926, at *1 (W.D.N.Y. May 3, 2023) (quotations and alterations omitted). "That a document was produced in discovery pursuant to a

protective order has no bearing on the presumption of access that attaches when it becomes a judicial document." *In re Keurig*, 2023 WL 196134, at *5 (quotation and alteration omitted).

## B.    <u>Application</u>

Defendant requests that the Court seal four exhibits filed with Plaintiff's motion to compel, consisting of portions of GEICO claims adjuster handbooks as well as GEICO's records retention schedule, and references to these exhibits in Plaintiff's Reply Memorandum of Law in Support of his Motion to Compel. (*See* Dkt. 44-7; Dkt. 44-8; Dkt. 44-9; Dkt. 44-11; Dkt. 60 at 8). As discussed in detail throughout this decision, the copies of the documents that have been filed are already significantly redacted. Plaintiff has not filed any opposition to this motion.

At the first step of the analysis, Defendant argues that these documents are not judicial documents because they were filed in connection with a motion to compel discovery. (*See* Dkt. 52 at 5). However, in *Brown*, the Second Circuit characterized documents submitted in connection with discovery disputes as having a "generally somewhat lower" presumption of public access, not *zero* presumption of public access. 929 F.3d at 50. Moreover, courts regularly treat documents filed in connection with motions to compel as judicial documents when they are relevant to resolving the motion. *See, e.g.*, *Popovchak v. UnitedHealth Grp. Inc.*, No. 22-CV-10756 (DEH), 2025 WL 1312879, at *4 (S.D.N.Y. May 6, 2025); *Xerox Corp. v. Conduit Glob., Inc.*, No. 6:21-CV-06467 EAW, 2025 WL 586244, at *4 (W.D.N.Y. Feb. 24, 2025*); Parkinson v. Desormeau*, No. 22 CV 851 (LDH)(LB), 2024 WL 4973490, at *8 (E.D.N.Y. Dec. 4,

2024); *see also Stern v. Crosby*, 529 F. Supp. 2d 417, 421 (S.D.N.Y. 2007) (noting that materials generated in discovery become judicial documents when they are relied upon by the court in resolving a discovery dispute such as a motion to compel). Here, the documents that Defendant requests be sealed are not merely relevant to the Court's exercise of judicial authority. Rather, the documents are central to the Court's resolution of Plaintiff's motion to compel, and the public would be severely hampered in understanding the Court's decision if they were sealed. Therefore, the documents at issue are judicial documents.

At the second step, Defendant argues that "even if this Court were to consider any interest in public access, it should nevertheless allow GEICO's Confidential Documents to be filed under seal because they are, at best, only tangentially related to the Court's Article III duties." (Dkt. 52 at 5). As discussed, however, "where [a] document is submitted in connection with a discovery motion, rather than a dispositive motion, the presumption of access is entitled to only modest weight, because the resolution of a discovery motion does not require the Court to analyze the merits of the parties' claims or defenses." *In re New York City Policing*, 635 F. Supp. 3d at 253 (quotation omitted). Accordingly, the Court finds that any competing considerations that warrant sealing should be balanced against only a modest presumption of public access.

Defendant further suggests that because the documents at issue were produced pursuant to the Protective Order entered in this case, there is a lower presumption of public access. (*See* Dkt. 52 at 6). But while "[a] protective order may

provide guidance regarding what documents might be appropriate to seal . . . the decision to allow documents to be filed under seal is a wholly separate inquiry than whether to maintain confidential documents disclosed in discovery." *Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co.*, No. 15-CV-2926 DRH SIL, 2019 WL 5694256, at *20 (E.D.N.Y. July 22, 2019), *adopted*, 2020 WL 1242616 (E.D.N.Y. Mar. 16, 2020) (quotations omitted); *see also Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 168 (S.D.N.Y. 2018) (noting that "Courts in this District have long held that bargained-for confidentiality does not overcome the presumption of access to judicial documents" and collecting cases); *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 155 (S.D.N.Y. 2015) ("even if material is properly designated as Confidential or Highly Confidential by a protective order governing discovery, that same material might not overcome the presumption of public access once it becomes a judicial document"). By its own terms, the Protective Order provides that "Notwithstanding the designation of information as 'CONFIDENTIAL,' there is no presumption that such information merits sealing under applicable law." (Dkt. 37 at 5). Thus, in deciding whether to seal the documents at issue, the Court is not bound by the fact that the documents were designated as confidential pursuant to the Protective Order.

At the third step, Defendant argues that even if there is a presumption of public access, the documents at issue warrant sealing "because they contain confidential and proprietary information pertaining to GEICO's training practices, claim-handling practices, and internal processes and procedures." (Dkt. 52 at 7). Defendants include a declaration by a GEICO corporate representative stating that

"[t]he confidential documents Plaintiff seeks to file with his motion to compel are excerpts of larger documents . . . from which GEICO derives independent economic value." (Dkt. 52-2 at ¶ 7). The representative further states that "[i]f a competitor were to learn details about GEICO's confidential and proprietary training materials, claim-handling practices, and internal processes and procedures, the competitor . . . could gain a competitive advantage over GEICO and could cause GEICO substantial economic harm." (*Id.* at ¶ 8).

As to the portions of GEICO's claims adjuster handbooks (Dkt. 44-7; Dkt. 44-8; Dkt. 44-9), the Court finds that Defendant's assertions of competitive harm are too conclusory to overcome even the modest presumption of public access afforded to these documents. Even if GEICO derives independent economic value from the larger handbooks that these portions were excerpted from, the documents that have been filed with the Court are redacted such that the only surviving content is so thoroughly anodyne that it could not realistically be capable of causing GEICO economic harm.

Specifically, Docket No. 44-8 is completely redacted except for one sentence: "Claims Home Office has established the following guidelines regarding total losses." (Dkt. 44-8 at 2) (the guidelines that presumably follow are redacted). Docket No. 44-9 appears to be an excerpt from an index that is completely redacted except for the isolated phrases "Forms," Total Loss Explanation Form (CL-30)," "Total Loss Notice (CL-82)," and "Glossary of Automobile Terms." (Dkt. 44-9 at 3). Docket No. 44-7 is a longer excerpt with a few more unredacted portions, but those portions are similarly anodyne. As a representative example, under the heading "Settlement Options," the

only unredacted content reads:

> When a loss occurs, the policy provides GEICO with the following
> settlement options:
>     1. Pay for the loss in money

(Dkt. 44-7 at 35).

On its face, the unredacted material in these documents appears to be generic information that could apply to any automotive insurer. Defendant has not explained how this generic information constitutes proprietary training material. Defendant therefore does not sustain its burden of demonstrating with "particularity the basis for [its] sealing request to permit the court to make specific findings as to the necessity for sealing." *See McCane v. Wilkowski*, No. 1:18-CV-01489 EAW, 2023 WL 2965135, at *3 (W.D.N.Y. Apr. 17, 2023) (citation omitted).

Defendant has also failed to meet its burden with respect to GEICO's records retention schedule. The unredacted material in these documents primarily consists of generic descriptions of the retention schedule's revision history (*see, e.g.*, Dkt. 44-11 at 2 ("Updated Draft")), a generic list of documents that could constitute "Claims records" (*see, e.g.*, *id.* at 3 ("Liability investigation - may include police reports, statements, recorded statements, field investigation, photos, scene diagrams, videos, and other materials")), and a list of retention codes that denote the length of time a record should be retained. The only specific information about GEICO's internal document retention procedures that is unredacted is the length of time that GEICO retains claims files. But Defendant has not made a specific showing that this information has any particular value or that disclosure would result in economic

harm.

In sum, while the documents at issue are entitled to only a modest presumption of public access, Defendant has not put forth any non-conclusory competing considerations that warrant sealing the documents. For these reasons, Defendant's motion to seal (Dkt. 51) is denied.

## III.   <u>Plaintiff's Motion to File a Response to Defendant's Sur-Replies</u>

Plaintiff seeks leave to file a response to Defendant's responses (Dkt. 72; Dkt. 73) to Plaintiff's notices of supplemental authority, which he characterizes as, "unauthorized sur-replies in violation of Loc. R. Civ. P. 7(a)(6)." (Dkt. 76 at 1). In the alternative, Plaintiff seeks an order striking Defendant's responses. (*Id.*).

"Absent permission of the Judge hearing the motion, sur-reply papers are not permitted" in this District. Loc. R. Civ. P. 7(a)(6). "[W]hether to permit the filing of a sur-reply is entirely within the Court's discretion." *Marseet v. Rochester Inst. of Tech.*, No. 20-CV-7096FPG, 2022 WL 2718509, at *1 (W.D.N.Y. July 13, 2022).

Initially, the Court notes that Plaintiff's notices of supplemental authority are effectively sur-replies, as they include brief yet substantive commentary that raise legal arguments as to the impact of the noticed cases on this action. *See Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 517 F. Supp. 3d 32, 33 (D. Mass. 2021) (noting that it is generally "improper for a notice [of supplemental authority] to include legal argument accompanying the cited authority" and collecting cases); *see also Steuben Foods, Inc. v. Oystar USA, Inc.*, 520 F. Supp. 3d 310 (W.D.N.Y. 2021) ("arguments as to the impact of [the] supplemental authorities on the instant action[]" constitute

substantive commentary).

In addition, the two cases that are discussed in Plaintiff's notices of supplemental authority are unreported district court decisions. It should go without saying that "the Court is . . . capable of finding and applying relevant caselaw to the matters before it." *Doe v. Upperline Health, Inc.*, No. 1:23-CV-01261-RLY-CSW, 2024 WL 4133985, at *1 (S.D. Ind. May 21, 2024) (quotation omitted). More importantly, the legal propositions that these notices draw the Court's attention to are simply quotes from earlier cases. (*See* Dkt. 66 at 1; Dkt. 68 at 1). In the first notice, Plaintiff cites a proposition (Dkt. 66 at 1 ("[t]he weight of authority in the Second Circuit goes against allowing a party to redact information from admittedly responsive and relevant documents based on that party's unilateral determinations of relevancy")) that is identical to one he included his first memorandum of law in support of his motion to compel. (*See* Dkt. 44 at 5-6 ("The weight of authority in this Circuit goes against allowing a party to redact information from admittedly responsive and relevant documents based on the party's unilateral determinations of relevancy.").

In short, these cases do not reflect any changes in the relevant caselaw; they merely survey pre-existing caselaw. <u>Going forward in this case, the parties are advised that notices of supplemental authority should be used sparingly—principally for new controlling authority or decisions that reflect developments in the relevant caselaw—and such notices should not include any substantive commentary.</u> Given that these notices of supplemental authority include substantive commentary, and because they cannot be struck insofar as the Court cannot "unsee" relevant cases, it

would be unfair to strike Defendant's responses to the notices.

Nevertheless, the Court finds that Defendant's responses go beyond the narrow legal issue of relevancy redactions and assert new arguments that were not included in the initial briefing on Plaintiff's motion to compel.[9] Accordingly, the Court finds that it would be equally unfair to deny Plaintiff leave to file a response. Plaintiff's motion (Dkt. 76) is therefore granted, and the Court has reviewed and considered the response submitted by Plaintiff.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel (Dkt. 43) is granted in part and denied in part; Defendant's motion to seal (Dkt. 51) is denied; Plaintiff's motion for leave to file a response to Defendant's sur-replies (Dkt. 76) is granted; and Defendant's motion for leave to file a sur-reply (Dkt. 144) is denied as moot.

Within 14 days of the entry date of this Decision and Order, Defendant shall (1) produce to Plaintiff unredacted copies of the eight GEICO claims adjuster handbooks and (2) provide the Court with an unredacted copy of GEICO's records retention schedule for *in camera* review.

Within 14 days of the entry date of this Decision and Order, Plaintiff shall file unredacted copies of his briefs filed under Docket Nos. 60 and 151.

---

[9]    As discussed *supra*, Defendant devotes a large portion of one response to allegations regarding Plaintiff's counsel's purported "willingness to violate courts' protective orders." (*See* Dkt. 72 at 2-3). These allegations will be addressed by the Court in connection with Plaintiff's pending motion to amend the protective order in this matter (Dkt. 147), which it will decide in due course.

**SO ORDERED**.

_____
COLLEEN D. HOLLAND
United States Magistrate Judge

Dated:   Rochester, New York
         July 1, 2025