UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHN MARCELLETTI, *on behalf of himself
and all others similarly situated*,

                Plaintiff,

    v.

GEICO GENERAL INSURANCE COMPANY,

                Defendant.

**DECISION AND ORDER**

6:23-CV-06211 EAW CDH

## <u>INTRODUCTION</u>

On April 17, 2023, plaintiff John Marcelletti ("Plaintiff") commenced this putative class action suit against defendant GEICO General Insurance Company ("GEICO General"). (Dkt. 1). On July 17, 2024, Renata Shiloah ("Ms. Shiloah") commenced a similar putative class action in this Court against GEICO Indemnity Company ("GEICO Indemnity"). *See Shiloah v. GEICO Indemnity Company*, Civil Action No. 6:24-cv-6447 (W.D.N.Y.) ("*Shiloah*"). The two cases involve essentially identical breach of contract claims and the named plaintiffs and the GEICO defendants are, respectively, represented by the same attorneys.

Presently before the Court is Plaintiff's motion (Dkt. 147) to modify the Stipulated Protective Order and Confidentiality Agreement ("Protective Order") (Dkt. 37) entered in this case on June 18, 2024. The primary purpose of Plaintiff's motion is to allow for the sharing of discovery between the parties in this case and *Shiloah*. (*See* Dkt. 148 at 6). GEICO General opposes the motion. (Dkt. 153).

Also before the Court are three motions to seal filed by GEICO General. (Dkt. 154; Dkt. 165; Dkt. 170). The motions to seal seek to redact information in Plaintiff's memorandum of law (Dkt. 148) and reply (Dkt. 157) in support of his motion to modify the Protective Order, as well as information in Plaintiff's memorandum opposing GEICO General's first motion seal (Dkt. 164). Plaintiff opposes all three motions to seal. (Dkt. 164; Dkt. 169; Dkt. 173).

For the reasons set forth below, Plaintiff's motion to modify the Protective Order (Dkt. 147) is granted in part and denied in part, and GEICO General's motions to seal (Dkt. 154; Dkt. 165; Dkt. 170) are denied.

## BACKGROUND

This case has been referred to the undersigned for all non-dispositive pretrial matters. (Dkt. 28; Dkt. 74). Familiarity with the background of this case and *Shiloah* is assumed for the purposes of this Decision and Order, and the procedural history of these matters is discussed only in relevant part.

The Protective Order entered in this case provides that discovery material designated as "Confidential Information" shall be used only for purposes of this action. (Dkt. 37 at 4). A substantively identical protective order was entered in *Shiloah*, and includes the same restriction on the use of discovery materials designated as "Confidential Information" in that action. (*Shiloah*, Dkt. 32).

On May 8, 2025, the parties in *Shiloah* submitted a joint proposed discovery plan in advance of their Rule 16 scheduling conference describing their "fundamental disagreement on the sharing of discovery" between this case and *Shiloah*. (*Shiloah*,

Dkt. 52 at 1). Ms. Shiloah took the position that sharing discovery between the two cases will save time and resources, allow her to expedite the filing of a motion for class certification in *Shiloah*, and help avoid relitigating identical discovery disputes. (*See id.* at 2). GEICO Indemnity took the position that Ms. Shiloah could have obtained discovery from this case by consolidating the two actions but chose not to. (*Id.* at 5). GEICO Indemnity also expressed concern about the sharing of confidential information between the two actions given Plaintiff's counsel's purported "willingness to violate Protective Orders." (*Id.* at 6).

On May 20, 2025, the Court held oral argument in this case on Plaintiff's then-pending motion to compel production of unredacted internal GEICO documents and documents filed in a separate class action, *Lewis v. Gov't Emps. Ins. Co.*, No. 18-CV-05111 (D.N.J.), against a third GEICO entity, and in the appeal to the Third Circuit of that case's class certification motion, *Lewis v. Gov't Emps. Ins. Co.*, No. 22-3449 (3d Cir.) (collectively, the "*Lewis* Documents"), as well as several related motions. (Dkt. 39; Dkt. 135). Following oral argument, the Court went on the record in *Shiloah* for a continued scheduling conference to address the parties' dispute over the sharing of discovery between the two cases. (*Shiloah*, Dkt. 55). The Court encouraged the parties to resolve the issue amongst themselves and advised Plaintiff to file a motion to modify the Protective Order in this case if the parties could not reach an agreement.

The parties did not reach an agreement, and Plaintiff filed the instant motion to modify the Protective Order on June 6, 2025, attaching a redlined copy of his proposed amended protective order ("PAPO"). (Dkt. 147; Dkt. 148-1). The PAPO

would provide for the sharing of discovery between this case and *Shiloah* through the
following exceptions to the restriction on the use of discovery material designated as
confidential in this case:

> (i) [T]he transcripts of the November 22, 2024 deposition of Kevin
> Costigan (and all exhibits attached thereto), the December 6, 2024
> deposition of David Antonacci (and all exhibits attached thereto) and the
> December 9, 2024 deposition of Mindy West (and all exhibits attached
> thereto) shall be available to Plaintiff Renata Shiloah for use in
> [*Shiloah*], subject to the terms of the protective order in the *Shiloah*
> action as if designated as "Confidential" in the *Shiloah* action[;] and

> (ii) [T]he unredacted claims adjuster handbooks and [the *Lewis*
> Documents] that Plaintiff Marcelletti seeks in his action . . . if ordered
> by the Court to be produced here, shall be available to Plaintiff Shiloah
> for use in the *Shiloah* action subject to the terms of the protective order
> in the *Shiloah* action as if designated as "Confidential" in the *Shiloah*
> action.

(Dkt. 148-1 at 5). The PAPO would also permit the parties to "cross-notice and take
depositions of corporate and corporate employee witnesses, individually or as a
corporate representative, in this [a]ction and the *Shiloah* action such that the
deposition transcripts and attached exhibits can be used in both cases, subject to the
protective order in each case." (*Id.* at 13-14).

GEICO General opposes Plaintiff's motion, first, on the grounds that the
proposed scope of shared discovery is overbroad. GEICO General argues that Plaintiff
and Ms. Shiloah will have "unqualified use" of information that is only relevant in
the other's action. (Dkt. 153 at 2). In other words, each plaintiff will be obtaining
information that is outside the scope of relevant discovery pursuant to Federal Rule
of Civil Procedure 26. GEICO General represents that it would consider the sharing
of discovery on an *ad hoc* basis if Plaintiff or Ms. Shiloah specifically identify any

documents or testimony that is relevant to his or her particular case. (*Id.* at 2-4). GEICO General opposes Plaintiff's motion on the further grounds that "Plaintiff's Counsel's continued refusal to acknowledge that they have on multiple occasions violated various protective orders through their conduct in the *Marcelletti* case gives GEICO General and GEICO Indemnity great concern about unnecessarily sharing irrelevant, confidential information." (*Id.* at 8).

On July 1, 2025, the Court entered a Decision and Order granting in part and denying in part Plaintiff's motion to compel the production of some of the documents that he now seeks to share between the two cases. (Dkt. 159). Specifically, the Court ordered GEICO General to produce unredacted copies of eight claims adjuster handbooks but denied Plaintiff's motion as to the production of the *Lewis* Documents, finding that the documents were outside the scope of relevant discovery and not proportional to the needs of this case. (*Id.* at 24).

## DISCUSSION

### I.    Motion to Modify the Protective Order

#### A.    Legal Standard on Motion to Modify Protective Order

The court may, for good cause, issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Once entered and relied upon, there is generally a strong presumption against modification of a protective order. *In re Teligent, Inc.*, 640 F.3d 53, 59 (2d Cir. 2011).

However, "the application of the strong presumption against modification is

- 5 -

dependent upon a protective order's particular characteristics and whether it invites reasonable reliance on the permanence of the order." *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308, 318 (D. Conn. 2009); *cf. S.E.C. v. TheStreet.Com*, 273 F.3d 222, 230 (2d Cir. 2001) ("It is . . . presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied."). Accordingly, a party opposing modification of a protective order must show that they relied on the order, and that such reliance was reasonable. *See Best Payphones, Inc. v. City of N.Y.*, No. 01-CIV-03934-JG-VMS, 2014 WL 12811911, at *6 (E.D.N.Y. Mar. 11, 2014).

When a party has reasonably relied on a protective order, the court should not modify the order "absent a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need." *TheStreet.Com*, 273 F.3d at 229 (alteration in original) (quoting *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979)). Conversely, when the parties could not have reasonably relied on a protective order, the presumption against modification does not apply, and the decision whether to modify the protective order is committed to the court's discretion. *Id.* at 231.

"[T]he following factors are relevant when determining whether a party has reasonably relied on the protective order: (1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order." *In re EPDM*, 255 F.R.D. at 318 (D. Conn. 2009); *see also Arcesium LLC v. Advent Software, Inc.*, No.

1:20-CV-04389 (MKV), 2022 WL 621973, at *3 (S.D.N.Y. Mar. 3, 2022) ("Most Courts in this Circuit evaluate a motion to modify a protective order by weighing the factors laid out in *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308 (D. Conn. 2009).").

### B.    GEICO General Could Not Have Reasonably Relied on the Protective Order

The Court first considers, based on the relevant factors, whether GEICO General could have reasonably relied on the Protective Order in producing the documents or submitting to the depositions at issue.[1]

#### 1.    Scope

"When considering a motion to modify [a protective order], it is relevant whether the order is a blanket protective order . . . or whether it is specifically focused on protecting certain documents or certain deponents for a particular reason." *In re EPDM*, 255 F.R.D at 319. "An order is considered to be a blanket order when, for example, it covers all documents produced during the litigation; when a producing party need only stamp a document 'CONFIDENTIAL' to apply the order; or when a producing party may designate confidential any material within broadly defined categories." *Trooper 1 v. New York State Police*, No. 22-CV-893-LDH-TAM, 2024 WL

---

[1]    Despite opposing modification, GEICO General does not address the legal standard to modify a protective order at all. GEICO General's legal argument is, instead, that the PAPO will permit the sharing of discovery that is outside the scope of relevant discovery under Rule 26. While GEICO General has failed to address the primary legal issue before the Court, the Court acknowledges that granting Plaintiff's motion would, in a sense, be compelling the "production" of discovery from this case for use in *Shiloah*. Therefore, GEICO General's arguments regarding relevance are not entirely inapposite. However, as discussed below, those arguments do not alter the Court's conclusion that modification of the Protective Order is warranted.

1349122, at *10 (E.D.N.Y. Mar. 29, 2024) (cleaned up). "A blanket protective order is more likely to be subject to modification than a more specific, targeted order because it is more difficult show a party reasonably relied on a blanket order in producing documents or submitting to a deposition." *In re EPDM*, 255 F.R.D at 319. "*Stipulated* blanket orders are even less resistant to a reasonable request for modification." *Id.* (emphasis in original).

Here, Plaintiff correctly notes that the Protective Order constitutes a blanket protective order. (Dkt. 148 at 20). For the Protective Order to apply, a party need only mark a document "CONFIDENTIAL." (*See* Dkt. 37 at 2). And to mark a document "CONFIDENTIAL," a party need only "reasonably believe[]" that the document contains "non-public, confidential or proprietary financial, technical, commercial, or personal information," or is "restricted or prohibited from disclosure by statute. (*See id.* at 1, 2). The Protective Order thus affords the parties substantial latitude to self-designate materials as confidential pursuant to several broadly defined categories. This degree of expansive protection diminishes any claim of reasonable reliance.

### 2.    Express Language

"Where a protective order contains express language that . . . anticipates the potential for modification, . . . it is not reasonable for a party to rely on an assumption that it will never be modified." *In re EPDM*, 255 F.R.D. at 320 (citing *TheStreet.Com*, 273 F.3d at 231 ("For instance, protective orders that are on their face temporary or limited may not justify reliance by the parties.")).

Here, the Protective Order expressly provides for modification: "This Protective Order is entered without prejudice to the right of any party to ask the court to order additional protective provisions, or to modify, relax or rescind any restrictions imposed by this Protective Order." (Dkt. 37 at 7-8). Because the parties expressly agreed that the Protective Order would be subject to modification by the Court, any expectation otherwise would not have been reasonable.

### 3.    Level of Inquiry by Court Prior to Granting Order

"Whether a protective order is entitled to [the] strong presumption against modification is also dependent upon . . . how much consideration the court gave to the request for a protective order before granting it." *In re EPDM*, 255 F.R.D. at 321. The strong presumption against modification "applies where a court has already considered each document in the first instance according to a 'good cause' standard [but] is not appropriate in cases with stipulated protective orders that grant parties open-ended and unilateral deference to protect whichever discovery materials they choose." *Id.* (quotation omitted). "In the absence of the requisite good cause showing, it cannot be presumed that every piece of discovery filed under [a protective order] is actually worthy of such a high level of protection." *Id.* at 322 (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006) ("[T]he mere existence of a confidentiality order says nothing about whether complete reliance on the order to avoid disclosure was reasonable.")). Accordingly, "[w]here an order is granted upon the parties' stipulation and agreement absent a showing of good cause, this factor generally weighs in favor of modification and against a finding of reliance." *Trooper*

*1*, 2024 WL 1349122, at *10 (quotation omitted); *see also Arcesium LLC*, 2022 WL 621973, at *5 ("Courts have found that where the Court 'so orders' a stipulated protective order, modification is favored if warranted.").

In this case, the parties stipulated to and the Court "So Ordered" the Protective Order, which as discussed above, affords the parties substantial latitude to designate materials as confidential. The discovery materials at issue have never been presented to the Court for a particularized determination that there is good cause for nondisclosure. The Court's prior level of inquiry therefore weighs against any claim of reasonable reliance.

### 4.    <u>Nature of the Reliance</u>

"The extent to which a party can rely on a protective order should depend on the extent to which the order induced the party to allow discovery[.]" *In re EPDM*, 255 F.R.D. at 322 (quotation omitted). "[W]here the parties have not given up any rights and indeed would have been *compelled* to produce the discovery materials even in the absence of a protective order, the presumption against modification is not as strong." *Id.* at 323 (emphasis in original).

Here, GEICO General was in fact compelled to produce the unredacted claims adjuster handbooks. (*See* Dkt. 159). The Court compelled GEICO General to produce the handbooks because Plaintiff is entitled to relevant discovery under the Federal Rules of Civil Procedure. Thus, GEICO General could not argue that the Protective Order induced it to produce these documents. However, the Court must acknowledge some degree of reliance with respect to the handbooks. One basis cited for the Court

in disallowing redactions of otherwise relevant documents is that the supposedly irrelevant information will still be protected where a protective order has been entered. (*See id.* at 13). Nevertheless, in this instance, this issue is of minor consequence. The unredacted handbooks will not be subject to meaningfully less protection as a result of their use in *Shiloah*, as they will be subject to an identical protective order and as Ms. Shiloah is represented by the same counsel as Plaintiff, to whom the handbooks have already been produced.

The same reasoning applies to the deposition transcripts of GEICO General's Rule 30(b)(6) representatives. GEICO General does not dispute that Plaintiff would have been entitled to conduct these depositions even in the absence of the Protective Order. The use of the transcripts and exhibits in *Shiloah* will also be subject to an identical protective order and access to the documents will be limited to the same counsel as this case.

On balance, the Court concludes that even if GEICO General had argued that it relied on the permanence of the Protective Order (which it has not), any reliance would not have been reasonable with respect to the discovery materials at issue. The strong presumption against modification is therefore inapplicable and the Court, in its discretion, finds that modification of the Protective Order is warranted for the efficiency reasons set forth by Plaintiff. In particular, allowing modification of the Protective Order will promote the efficient disposition of both matters, conserve the resources of the parties, and allow for the streamlined consideration of discovery-related legal issues.

Further, even assuming *arguendo* that the strong presumption against modification did apply, courts have found that sharing discovery between related cases constitutes a compelling need for modification. *See, e.g.*, *Tradewinds Airlines, Inc. v. Soros*, No. 08 CIV. 5901 (JFK), 2016 WL 3951181, at *2 (S.D.N.Y. July 20, 2016) (finding a compelling need where, without modification of the protective order, "the same discovery materials will likely have to be reviewed and re-produced, needlessly causing duplication of effort and extra expense"); *Charter Oak Fire Ins. Co. v. Electrolux Home Prods., Inc.*, 287 F.R.D. 130, 134 (E.D.N.Y. 2012) ("In this case, there is a compelling and extraordinary need to share these common discovery materials with counsel for the same plaintiff in other related litigations against Electrolux, especially in the absence of any discernible prejudice to Electrolux. If the Protective Order is not modified, plaintiff will be forced to litigate the exact same issue in each and every case."). Modification would therefore still be warranted.

### 5.   <u>Other Considerations</u>

The concerns expressed by GEICO General do not alter the Court's conclusion that modification of the Protective Order is warranted. First, GEICO General argues that sharing the entirety of the three GEICO General Corporate Representatives' deposition transcripts and all exhibits is beyond the scope of relevant discovery in *Shiloah*. According to GEICO General, "some of the deposition testimony and certain of the deposition exhibits concerned Plaintiff Marcelletti's total loss claim and the data GEICO General produced related to GEICO General insureds," which "has no relevance in the *Shiloah* action [against GEICO Indemnity], and thus there is no

basis to request that Plaintiff Shiloah have access to that discovery." (Dkt. 153 at 3; Dkt. 153-1 at ¶ 4).

However, as Plaintiff notes, GEICO General "cites no authority holding that sharing discovery between cases is only appropriate if there is a complete overlap with respect to relevance." (Dkt. 157 at 4) (emphasis omitted). As a general principle, "[u]se of the discovery fruits disclosed in one lawsuit in connection with other litigation, and even in collaboration among plaintiffs' attorneys, comes squarely within the purposes of the Federal Rules of Civil Procedure." *United States v. Hooker Chemicals & Plastics Corp.*, 90 F.R.D. 421, 426 (W.D.N.Y. 1981). Parties cannot circumvent this principle for purely tactical reasons by stipulating in a blanket protective order that any discovery material they designate as confidential can only be used for purposes of the underlying action. *See Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 192 F. Supp. 3d 400, 406 (S.D.N.Y. 2016) (ordering parties to remove a similar clause from their protective order on the basis that "where . . . two lawsuits have been filed by the same plaintiff, in the same court, on the same legal theories, against two defendants who already share the same counsel, it is difficult to imagine what non-tactical objection [the plaintiff] could have to the prospect of those defendants sharing discovery as well.").

Courts generally grant blanket protective orders such as the one here to facilitate large-scale discovery and to accommodate the parties' "legitimate interest in keeping the discovery materials out of the public hands for commercial reasons." *In re EPDM*, 255 F.R.D. at 319. Modifying the Protective Order as proposed will not

frustrate GEICO's commercial interests. The PAPO does not make any confidential material more accessible to the public or to any of GEICO's competitors. To the extent that Ms. Shiloah will have access to some limited discovery that is specific to Plaintiff's claim, her counsel will be bound by the protective order in *Shiloah*. Moreover, modification does not impose any discernable burden on GEICO General, as Ms. Shiloah's counsel is already in possession of all these materials through this case.

GEICO General further argues that the protective orders in this case and *Shiloah* are not sufficient recourse because of Plaintiff's counsel's purported violations of various protective orders. (Dkt. 153 at 8). However, the Court agrees with Plaintiff that this argument is a red herring. Plaintiff's counsel already has access to the confidential information at issue. GEICO General does not explain how preventing the sharing of discovery between the two cases would afford its confidential information any greater degree of protection than currently exists. The Court, of course, does not condone the violation of protective orders, but even accepting GEICO General's characterizations (which Plaintiff's counsel has strongly disputed), this issue is ultimately immaterial to resolution of the instant motion.

In sum, GEICO General has not shown any prejudice or burden that would result from modifying the Protective Order, much less some prejudice or burden that would outweigh the clear efficiencies that would result from the sharing of discovery between this case and *Shiloah*. Plaintiff's motion to modify the Protective Order (Dkt. 147) is therefore granted in part and denied in part. Specifically, the Court denies the

motion only to the extent that the PAPO proposes the sharing of the *Lewis* Documents, because the Court did not order that GEICO General produce the *Lewis* Documents in this action. The Court otherwise grants the motion, and Plaintiff shall submit a revised proposed modified protective order with references to the *Lewis* Documents omitted.

## II.  Motions to Seal

### A.  Legal Standard on Motion to Seal

"Both the common law and the First Amendment accord a presumption of public access to judicial documents." *United Pool Distribution, Inc. v. Custom Courier Sols., Inc.*, No. 22-CV-06314-FPG, 2024 WL 2979365, at *1 (W.D.N.Y. June 13, 2024). "Therefore, when a party moves to seal a document, courts must engage in a three-step analysis to determine whether the document should be sealed." *Id.*

At the first step, "the court determines whether the record at issue is a judicial document—a document to which the presumption of public access attaches." *Olson v. Major League Baseball*, 29 F.4th 59, 87 (2d Cir. 2022) (quotation omitted). "A document is 'judicial' when it is 'relevant to the performance of the judicial function and useful in the judicial process.'" *In re New York City Policing During Summer 2020 Demonstrations*, 635 F. Supp. 3d 247, 251 (S.D.N.Y. 2022) (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995)). "A document is . . . relevant to the performance of the judicial function if it would reasonably have the tendency to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the

document ultimately in fact influences the court's decision." *Id.* (quoting *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019)).

At the second step, "[i]f a court determines the record at issue is a 'judicial document,' a determination that thereby attaches the common law presumption of public access to that record, it must next determine the particular weight of that presumption of access for the record at issue." *Olson*, 29 F.4th at 87. "'[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'" *Id.* at 87-88 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)).

"Courts determine the weight of the presumption of access . . . on a 'continuum' of importance." *In re New York City Policing*, 635 F. Supp. 3d at 252 (citing *Amodeo*, 71 F.3d at 1049 ("information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance")). Documents filed in connection with a discovery motion generally fall in the middle of the continuum and are entitled only to a modest presumption of access. *CRC Ins. Servs., Inc. v. Suh*, No. 22-CV-9528 (AT) (JW), 2025 WL 560749, at *2 (S.D.N.Y. Feb. 19, 2025); *see also Brown*, 929 F.3d at 50 ("Although a court's authority to oversee discovery . . . constitutes an exercise of judicial power, we note that this authority is ancillary to the court's core role in adjudicating a case. Accordingly, the presumption of public access in filings submitted in connection with discovery disputes . . . is generally somewhat lower than the presumption applied to

material introduced at trial, or in connection with dispositive motions[.]"). But even where a motion to seal concerns a discovery document for which the presumption of public access is modest, "a court must still articulate specific and substantial reasons for sealing such material, [though] the reasons usually need not be as compelling as those required to seal summary judgment filings." *Brown*, 929 F.3d at 50.

At the third step, "once the weight of the presumption has been assessed, the court is required to 'balance competing considerations against it.'" *Olson*, 29 F.4th at 88 (quoting *Amodeo*, 71 F.3d at 1050). One such consideration is "the possibility of competitive harm to an enterprise if confidential business information is disclosed." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MC-2542 (VSB), 2023 WL 196134, at *3 (S.D.N.Y. Jan. 17, 2023), *reconsideration denied*, WL 3966703 (S.D.N.Y. June 13, 2023); *see also United Pool Distribution, Inc.*, 2024 WL 2979365, at *1 (noting that courts in this Circuit routinely seal documents that contain confidential and proprietary technical, financial, business, third party and/or trade secret information). "Although the protection of sensitive, confidential, or proprietary business information is a countervailing interest that can militate in favor of sealing, conclusory statements that documents contain confidential business information are insufficient to justify sealing." *TileBar v. Glazzio Tiles*, 723 F. Supp. 3d 164, 209 (E.D.N.Y. 2024) (quotation and alteration omitted). "Rather, the moving party must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection." *Id.* (quotation and alteration omitted).

"The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action[.]" *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997). "Deciding whether to accept judicial documents under seal is a wholly separate inquiry from deciding whether to maintain the confidentiality of documents disclosed between the parties in discovery." *In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis With Kinectiv Tech. & VerSys Femoral Head Prods. Liab. Litig.*, No. 18-MC-2859 (PAC), 2021 WL 1625390, at *1 (S.D.N.Y. Apr. 27, 2021). "[I]t is well-established that confidentiality agreements alone are not an adequate basis for sealing and material designated as Confidential by a protective order might not come overcome the presumption of public access once it becomes a judicial document." *Thomas v. ConAgra Foods, Inc.*, No. 6:20-CV-06239-EAW-MJP, 2023 WL 11984926, at *1 (W.D.N.Y. May 3, 2023) (quotations and alterations omitted). "That a document was produced in discovery pursuant to a protective order has no bearing on the presumption of access that attaches when it becomes a judicial document." *In re Keurig*, 2023 WL 196134, at *5 (quotation and alteration omitted).

**B.   Sealing is Not Warranted as to Any of the Three Briefs**

GEICO General seeks to have redacted versions of Plaintiff's memorandum of law (Dkt. 148) and reply (Dkt. 157) in support of his motion to amend the Protective Order, and Plaintiff's response in opposition to GEICO General's first motion to seal (Dkt. 164) be filed on the public docket. (Dkt. 155). Plaintiff has filed redacted versions of these briefs, but GEICO General proposes that its own versions with fewer

redactions be filed instead. (*See* Dkt. 155 at 4 n.1; Dkt. 166 at 4 n.1; Dkt. 171 at 4 n.1). Plaintiff opposes the three motions to seal.[2] (Dkt. 164; Dkt. 169; Dkt. 173).

Because the categories of information that GEICO General seeks to redact across the three briefs is virtually identical, and because GEICO General's arguments in support of sealing are also identical, the Court finds it appropriate to analyze all three motions to seal together. The crux of GEICO General's argument for sealing is repeated verbatim in each motion: "The limited portions of Plaintiff's [brief] referring to and purporting to summarize GEICO's Confidential Information warrant protection from public disclosure because they concern GEICO's confidential and proprietary claim-handling practices and its internal processes and procedures regarding the adjustment and settlement of total loss vehicle claims." (Dkt. 155 at 7; Dkt. 166 at 7; Dkt. 171 at 7). The Court, however, does not find that this rationale warrants sealing of the information at issue here.

At the first step of the analysis, the Court finds that Plaintiff's briefs are judicial documents. As this Court has previously noted, documents submitted in

---

[2]    One of Plaintiff's arguments is that the Court should deny GEICO General's motions to seal because they "do[] not set forth the 'rational[e] for the proposed duration of the requested order'" pursuant to Local Rule of Civil Procedure 5.3(c)(2)(C). (*See, e.g.*, Dkt. 164 at 18). While GEICO General does not specifically identify the proposed duration of the requested sealing order, its rationale for sealing, however flawed, clearly contemplates an indefinite order. In the case that Plaintiff relies on for this argument, *Savage v. Sutherland Glob. Servs., Inc.*, No. 6:19-CV-06840 EAW, 2025 WL 1224346 (W.D.N.Y. Apr. 28, 2025), the movant did not even file a memorandum of law and "provided no discussion of the applicable legal standards or proffered any legal authority to support its motion." *Savage*, 2025 WL 1224346, at *2. The Court finds those circumstances to be distinguishable, and therefore does not find that any of the three motions to seal should be denied for failing to comply with Local Rule 5.3(c)(2)(C).

connection with discovery disputes have a "generally somewhat lower" presumption of public access, but not *zero* presumption of public access.[3] (*See* Dkt. 159 at 28) (quoting *Brown*, 929 F.3d at 50). Moreover, Plaintiff's briefs are plainly relevant to the performance of the judicial function and useful in the judicial process because they were created specifically to influence the Court's determination of whether to modify the Protective Order and whether to seal information in Plaintiff's briefs.[4] *See Schiller v. City of N.Y.*, No. 04 CIV. 7921(KMK)(JC), 2006 WL 2788256, at *5 (S.D.N.Y. Sept. 27, 2006) ("Documents created by or at the behest of counsel and presented to a court in order to sway a judicial decision are judicial documents that trigger the presumption of public access."). Courts have also held that briefs submitted on a motion to modify a protective order constitute judicial documents. *See, e.g.*, *Giuffre v. Dershowitz*, No. 19 CIV. 3377 (LAP), 2021 WL 5233551, at *5 (S.D.N.Y. Nov. 10, 2021).

    At the second step, the Court finds that Plaintiff's briefs are entitled to only a

---

[3]    GEICO General argues in its first motion to seal that the information it seeks to redact has no presumption of public access. (*See* Dkt. 155 at 5). However, it appears to have abandoned that argument in its subsequent two motions, which were filed after this Court issued its July 1, 2025 Decision and Order, noting that documents submitted in connection with discovery disputes *can* be judicial documents. (*See* Dkt. 159).

[4]    This case is distinguishable from *Nichols v. Noom Inc.*, No. 20-CV-3677-LGS-KHP, 2021 WL 857352 (S.D.N.Y. Mar. 8, 2021), which GEICO General relies on in its first motion to seal. (*See* Dkt. 168 at 5). There, the subject documents were filed in connection with a case management conference. Here, the Court determined at this case's scheduling conference that formal motion practice was necessary to resolve the dispute over modifying the Protective Order, and the information at issue was accordingly presented to the Court in the context of a motion. At that point, the information could not be characterized as merely "teeing up" a discovery dispute.

modest presumption of access because they were submitted in connection with a discovery dispute that is ancillary to the Court's core role in adjudicating the underlying claims in this case. Accordingly, while the Court must still articulate specific and substantial reasons for sealing the information at issue, such reasons need not be as compelling as those required to seal information with a stronger presumption of public access.

At the third step, the Court finds that GEICO General has not put forth any non-conclusory assertions of economic harm sufficient to overcome even the modest presumption of access afforded to Plaintiff's briefs.[5] The Court cannot make the requisite specific, on-the-record findings necessary for sealing when, as here, the moving party does not show why the information at issue is sensitive or how it will be harmed if the information is disclosed. *See Wells Fargo Bank, N.A. v. Wales LLC*, 993 F. Supp. 2d 409, 414 (S.D.N.Y. 2014) (denying motion to seal where movant "provide[d] no insight into, *inter alia*, how disclosure . . . would cause competitive harm"). A specific showing of harm is necessary even when the information at issue is purportedly non-public. *See Coventry Cap. US LLC v. EEA Life Settlements, Inc.*, No. 17-CIV-7417-VM-HBP, 2017 WL 5125544, at *3 (S.D.N.Y. Nov. 2, 2017) ("Implicit in the notion of 'confidential business information' is something beyond the mere fact that the particular datum has not previously been made available to the public.")

---

[5]    The Court acknowledges that GEICO General's proposed redactions are limited in relation to Plaintiff's briefs as a whole. Nevertheless, its assertions of harm are too conclusory to overcome the presumption of public access. *See GSC Logistics, Inc. v. Amazon.com Servs. LLC*, No. 23-CV-5368 (JGLC), 2023 WL 4993644, at *6 (S.D.N.Y. Aug. 4, 2023) ("[S]imply because the proposed redactions are narrow . . . does not mean that the redactions must be granted.").

(quotation and alteration omitted).

Even accepting that the information at issue is non-public—an assertion that the Court finds dubious (*see* Dkt. 164 at 15-16 (Plaintiff's showing that the information is publicly available))—the information does not disclose any specific claim-handling practices other than one GEICO General says it has ceased and which it does not propose redacting—namely, its practice of not paying sales tax for total loss leased vehicles. (*See* Dkt. 171-1 at 16). The information at issue only implicates GEICO General's claim-handling practices to the extent that it discloses, in a highly broad fashion, how those practices are coordinated between the various GEICO entities. GEICO General does not explain how it derives value from this particular information, or how, despite asserting as much, such information could be utilized by competitors to "gain a competitive advantage over GEICO and cause GEICO substantial economic harm." (*See, e.g.*, Dkt. 155 at 7). In other words, GEICO General fails to show—and it is facially unclear—how the information at issue has any specific connection to the theory of harm it sets forth as the basis for sealing. This is further underscored by the fact that GEICO General's papers in support of its motions are virtually identical to those filed in support of its previous motion to seal, which involved entirely different documents and categories of information, and which the Court denied on similar grounds.

C.     **Future Motions to Seal**

The Court has now denied four motions to seal filed by GEICO General due to its failure to show how disclosure of the information at issue could cause it harm. The

Court has explained the standard for granting a motion to seal and emphasized that conclusory assertions of competitive harm are insufficient to seal documents with a presumption of public access. Accordingly, going forward, any future motion to seal in this action that relies on conclusory assertions of competitive harm and/or boilerplate affidavits that only address a broad category of information with no obvious relevance to *the specific information that the party seeks to seal* will be summarily denied, with leave to refile with a more substantial showing.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to modify the Protective Order (Dkt. 147) is granted in part and denied in part. Within 14 days of entry of this Decision and Order, Plaintiff shall file a proposed modified protective order consistent with the PAPO filed by Plaintiff (Dkt. 148-1) but without any reference to use of the *Lewis* Documents.

GEICO General's motions to seal (Dkt. 154; Dkt. 165; Dkt. 170) are denied. Within 14 days of entry of this Decision and Order, Plaintiff shall file on the public docket unredacted copies of his briefs filed under Docket Nos. 148, 157, and 164.

**SO ORDERED**.

_Colleen D. Holland_
COLLEEN D. HOLLAND
United States Magistrate Judge

Dated:   Rochester, New York
         August 12, 2025