UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN MARCELLETTI, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br><br>GEICO GENERAL INSURANCE COMPANY,<br><br>    Defendant. | Case No: 6:23-cv-6211-EAW-CDH |

**REPLY IN SUPPORT OF PLAINTIFF'S
EMERGENCY MOTION TO ENFORCE THIRD AMENDED SCHEDULING ORDER**

## TABLE OF CONTENTS

I. Introduction ........................................................................................................................ 1

II. Argument .......................................................................................................................... 3

    A. Dr. Braun did not rely upon the Couch or McDonnell declarations in performing his independent analysis of GEICO's claims data ................................................... 3

    B. GEICO's argument that Dr. Braun is "replicating" the class member count in the Couch declaration is not a basis to expand discovery ................................................. 4

    C. Plaintiffs' counsel did not instruct GEICO to rely upon the work of Mr. Couch and Mr. McDonnell to understand Dr. Braun's work ....................................................... 8

    D. GEICO's claim that Plaintiff's counsel "gamed" Dr. Braun's subpoena is false and irrelevant to whether Mr. Couch or Mr. McDonnell should be deposed ............................. 9

III. Conclusion ...................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**                                                                                               **Page(s)**

*Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*,
   2020 U.S. Dist. LEXIS 145596 (S.D.N.Y. Aug. 13, 2020) .................................................... 10

*Molly C. v. Oxford Health Ins., Inc.,* No. 21-CV-10144
   (PGG) (BCM), 2024 U.S. Dist. LEXIS 213282 (S.D.N.Y. Nov. 21, 2024) ......................... 6-7

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) .................................................................................................. 2, 6

*Tailored Lighting, Inc. v. Osram Sylvania Prods.*,
   255 F.R.D. 340 (W.D.N.Y. 2009) ........................................................................................... 3

*Yash Raj Films (USA) v. Kumar,* No. 05-CV-3811
   (FB) (KAM), 2007 U.S. Dist. LEXIS 79344 (E.D.N.Y. Oct. 25, 2007) .................................. 3

**Rules**

Fed. R. Civ. P. 16 ........................................................................................................................... 1
Fed. R. Civ. P. 23 ....................................................................................................................... 2, 6
Fed. R. Civ. P. 26 ........................................................................................................................... 1

I. **INTRODUCTION**

With the full deposition transcript of Dr. Braun now before the Court, GEICO offers three specific reasons that it needs to take the depositions of attorneys Alex Couch and Ruairi McDonnell. *See* ECF No. 130 at 1. But none establish that there is good cause under Fed. R. Civ. P. 16(b)(4) to expand the scope of discovery set forth in the Court's Third Amended Scheduling Order, which limited GEICO to a deposition of Dr. Braun (and no one else) and no written discovery. Regardless, GEICO cannot even meet its burden under Fed. R. Civ. P. 26(b) to show that the testimony of these attorneys would have *any* relevance to Dr. Braun's conclusions offered in support of Plaintiff's class certification motion or GEICO's ability to respond to them.

GEICO's primary argument is that when Dr. Braun identified 10,180 potential class members, he was "reverse-engineering" the attorneys' conclusions in their now withdrawn declarations, and that GEICO needs to know how the attorneys came up with the same number because if they did so differently, Dr. Braun's count may be "over-inclusive" of the attorneys' count. But neither Mr. Couch's nor Mr. McDonnell's declarations are being offered as evidence on Plaintiff's amended class certification motion, so the manner in which they reached their conclusions is irrelevant. Further, contrary to GEICO's suggestion, as their declarations show, Mr. McDonnell never counted 10,180 class members, and that number only appears in Mr. Couch's declaration. As such, GEICO really only argues for the deposition of Mr. Couch. On that count, GEICO fails to show good cause under Rule 16, let alone proportionality under Rule 26.

First, the count of 10,180 potential class members goes solely to a class certification inquiry that will not be dispute no matter how much discovery GEICO takes: ***numerosity***. Dr. Braun's estimate of 10,180 policyholders who did not receive the applicable New York sales tax, along with his estimate of 8,002 policyholders with claims for leased vehicles during the time GEICO admits it did not pay lessees the full applicable New York state sales tax, is not offered to show a

precise number of class members, but rather as an estimate to demonstrate the class is sufficiently numerous under Fed. R. Civ. P. 23(a)(1), which is all that is required. *See Robidoux v. Celani*, 987 F.2d 931, 935-936 (2d Cir. 1993) ("Courts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement . . . as few as 40 class members should raise a presumption that joinder is impracticable"). Accordingly, whether Dr. Braun's 10,180 number is "over-inclusive" of Mr. Couch's by a few hundred class members, as GEICO postulates, will not change the fact that GEICO's master file data shows that there are *thousands* of class members. Moreover, one of these two different calculations—the 8,002 class members with leases—was indisputably never done by Messrs. Couch or McDonnell at all, so even if the 10,180 count is thrown out altogether, numerosity is established.

Second, as detailed below, contrary to GEICO's accusations, Dr. Braun testified that he did all of his work "independently" and "on his own" using only GEICO's original master files of data for over 163,000 total loss claims to perform the independent calculations as reflected in his declaration. While he read Mr. Couch's and Mr. McDonnell's declarations, he did not know or want to know how they came up with their numbers, and he did not rely on any summary spreadsheet of their work. Rather, Dr. Braun testified that he initially pulled 10,428 claims with a zero in the "Sales Tax Amount" field from GEICO's master file spreadsheet and then went back to the master file data to see if he could figure out why his number was higher than the 10,180 reflected in Mr. Couch's declaration. After eliminating claims with non-New York zip codes and claims with negative taxable values, Dr. Braun came up with the same 10,180 figure. That this number is the same as in Mr. Couch's declaration is not surprising, as the result of a fairly simple counting of claims data should be the same if done correctly by both. And beyond this one matching number between the Dr. Braun's declaration and Mr. Couch's declaration, GEICO fails to show why the depositions of Mr. McDonnell and Mr. Couch are necessary to understand the

simple arithmetic Dr. Braun did using GEICO's own master file data and that he testified to *ad nauseum* in his nearly seven hour deposition. How attorney Couch did a similar calculation or how attorney McDonnell did any calculation simply will not change or add to what Dr. Braun testified to doing, and is not relevant since their declarations are not in evidence.

GEICO's remaining arguments fail too. As detailed herein, GEICO's claim that Plaintiff's counsel told GEICO's counsel that GEICO should rely on Messrs. Couch's and McDonnell's work to understand Dr. Braun's is false, as the deposition transcript shows. And GEICO's complaints about Dr. Braun's response to its document subpoena are red herrings because those complaints have nothing to do with whether Mr. Couch or Mr. McDonnell should be deposed.

In short, GEICO cannot show good cause to modify the Third Amended Scheduling Order, much less demonstrate a need to depose two attorneys about their work on declarations that are not offered as evidence on Plaintiff's amended motion for class certification and which had no bearing on Dr. Braun's conclusions. *See Tailored Lighting, Inc. v. Osram Sylvania Prods.*, 255 F.R.D. 340, 344 (W.D.N.Y. 2009) (while "not prohibited," "depositions of opposing counsel are generally disfavored") (citations omitted); *Yash Raj Films (USA) v. Kumar*, No. 05-CV-3811 (FB) (KAM), 2007 U.S. Dist. LEXIS 79344, at *11-12 (E.D.N.Y. Oct. 25, 2007) (same).

II.   **ARGUMENT**

    A.   **Dr. Braun did not rely upon the Couch or McDonnell declarations in performing his independent analysis of GEICO's claims data.**

Prior to the deposition of Dr. Braun, GEICO speculated that the attorneys were the true authors of his conclusions in the declaration and thus argued that it was entitled to depose them. *See* ECF No. 122 at 2-4. GEICO claimed that Plaintiff was trying to "shield from scrutiny the analyses, methodologies, and opinions upon which he relies to support his motion seeking class certification by simply attaching Dr. Braun's name to other people's work[.]" *See id.* at 4.

The premise that Plaintiff is seeking to gain some sort of advantage from using Dr. Braun

as a front for its attorneys' work is nonsensical. Plaintiff could only "shield from scrutiny" the analysis underlying the Braun declaration if Dr. Braun did not articulate in his deposition why he did what he did, and if he did so, that would *hurt* Plaintiff, not help him. In any event, the deposition transcript of Dr. Braun belies GEICO's surmise that he was a puppet. While Dr. Braun reviewed and was aware of the Couch and McDonnell declarations, he came to his own conclusions through his own analysis of the full set of GEICO claims data. *See generally* ECF No. 130 at Braun Tr. at 91:18-94:23 ("I'm going to do this [analysis] independently. . . . I don't want [the attorneys] to tell me how to do something. I can do it myself.") and 208:14-209:20 ("I saw the results of their analysis . . . . But . . . I wanted to do it independently"). As he explained, "[he] was not interested" in what Mr. Couch and Mr. McDonnell did, "wanted to do an independent evaluation[,]" and did so. *See id.* at Tr. at 228:12-20. And since GEICO spent the entire business day on May 5, 2025 deposing Dr. Braun, *see* ECF No. 130-1 at 17, it was clearly able to fully investigate how he reached his conclusions. GEICO therefore has no need for anything else in discovery.

> **B. GEICO's argument that Dr. Braun is "replicating" the class member count in the Couch declaration is not a basis to expand discovery.**

GEICO's primary justification for the depositions of Mr. Couch and Mr. McDonnell is that Dr. Braun's testimony purportedly revealed that he was "trying to replicate the results" reached by the attorneys. *See* ECF No. 130 at 1. But GEICO's only basis for this claim is the fact that Dr. Braun (i) initially counted 10,428 total loss claims in one of GEICO's spreadsheets with a zero in the "Sales Tax Amount" field, (ii) noticed that this number was larger than the 10,180 class members that Mr. Couch's now withdrawn declaration identified, and (iii) upon further investigation, identified and subtracted 13 claims with "a negative taxable value" for the vehicle in question and another 235 claims where the claimant was not in New York, to ultimately come to the same 10,180 figure as Mr. Couch. *See id.* at 2-5 (citing Dr. Braun's testimony at ECF No.

130 at Tr. 70:7-72:17).

As an initial matter, Mr. McDonnell's declaration did *not* identify a total number of class members of 10,180, only Mr. Couch's declaration did.  *See* ECF No. 82 and ECF No. 85.  Thus, this argument really only applies to Mr. Couch.[1]  In any case, GEICO fails to show either good cause or even that the discovery it seeks is relevant and proportional to the needs of the case.  Notwithstanding that GEICO spent several pages on this argument,[2] GEICO's *only* specific explanation for why the fact that Dr. Braun's count matches Mr. Couch's count means that it needs the attorneys' depositions is "[w]ithout discovery of Mr. Couch's and Mr. McDonnell's methodologies, neither GEICO nor this Court can know whether Mr. Couch and Mr. McDonnell omitted the same sets of claims that fit the same criteria to opine there are 10,180 putative class members.  This is critical because if Mr. Couch and Mr. McDonnell had omitted any other claim for any other reason, then Dr. Braun's opinion may be over-inclusive and thus unreliable and inadmissible."  *See* ECF No. 130 at 4.  In other words, GEICO says that it wants to know whether Mr. Couch omitted claims *other* than those with a negative taxable value for the vehicle or those where the claimant was not in New York, because if he did, then that would mean that Dr. Braun's count of 10,180 could be over-inclusive *vis a vis* the attorney's count.  *See id.*

This argument fails to justify the discovery GEICO seeks.  For one thing, since the Couch and McDonnell declarations are no longer in evidence and are not being offered as evidence for Plaintiff's class certification motion, it is plainly irrelevant if Dr. Braun's count is "over-inclusive"

---

[1] Both Dr. Braun in his deposition and GEICO in its brief conflate the attorneys' declarations when they indicate that they both attorneys identified 10,180 class members.  Dr. Braun's testimony on this point is, if anything, further evidence that the attorney declarations were not important to him.

[2] Much of GEICO's arguments are premature class certification arguments which Plaintiff will address them when necessary.  In addition, while GEICO suggests that Dr. Braun's having billed Plaintiff for only 27.25 hours of work suggests that the attorneys fed him the final results, *see id.* at 4-5, given that Dr. Braun's task involved counting and simple arithmetic, the time he spent is certainly not unreasonably short.  *See* ECF No. 130 at Tr. 214:6-10 (testifying that "[i]t's just a matter of working with spreadsheets and applying the arithmetic").

compared to what the attorneys did. Again, Dr. Braun is now the *only* declarant Plaintiff is relying on to count class members and he clearly explained in both his declaration and his deposition that he came to the count of 10,180 class members by counting the total loss claims in one of GEICO's spreadsheets with a zero in the "Sales Tax Amount" field (10,428 claims), subtracting claims with "a negative taxable value" for the vehicle in question (13 claims) and subtracting claims where the claimant was not in New York (235 claims). *See* ECF No. 119-1 at pp. 5-6; ECF No. 130 at Tr. 70:7-73:3. GEICO does not need Mr. Couch or Mr. McDonnell if it wants to argue that Dr. Braun's count of 10,180 class members is "over-inclusive" because other claims should have been excluded from the total count, nor does it need them to attack Dr. Braun's conclusion on any other grounds that it deems appropriate.

Moreover, even if discovery revealed that Dr. Braun's count of 10,180 class members *was* "over-inclusive" compared to Mr. Couch's count, that would not get GEICO anywhere anyway because the 10,180 figure is relevant only to the numerosity inquiry, and that prong of Rule 23 is undoubtedly met in this case no matter how much discovery GEICO takes. As noted in the Introduction, the count of 10,180 class members was merely an *estimate* for purposes of establishing numerosity. Assume for the sake of argument that Mr. Couch just so happened to subtract 248 claims from the 10,428 claims with a zero in the "Sales Tax Amount" field for some legitimate reason *other* than the fact that those claims encompassed negative tax value claims and claims outside of New York, and thus reached the same 10,180 figure in a different manner that Dr. Braun. That would mean that, at most, Dr. Braun included in his estimate 248 claims that Mr. Couch did not. That difference is inconsequential because whether the class is 10,180 or 9,932, numerosity is easily satisfied. *See Robidoux*, 987 F.2d at 935-936 ("Courts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement . . . as few as 40 class members should raise a presumption that joinder is impracticable"); *Molly C.*

*v. Oxford Health Ins., Inc.*, No. 21-CV-10144 (PGG) (BCM), 2024 U.S. Dist. LEXIS 213282, at *16 (S.D.N.Y. Nov. 21, 2024) ("Courts in our Circuit generally do not require evidence of exact class size or identity of class members to satisfy the numerosity requirement.") (citations and quotations omitted). Likewise, any discovery into how Mr. Couch counted to 10,180 would not change the fact that Dr. Braun *separately* counted the number of identified leased vehicles that were total losses during the time period that GEICO was not paying sales tax for leased vehicles, and came up with 8,002 claims using that method, which had not been used by *either* Mr. Couch or Mr. McDonnell. *Compare* ECF No. 119-1 at pp. 4-5 with ECF No. 85 (Couch Declaration) and ECF No. 82 (McDonnell Declaration). So even if the Court disregarded the 10,180 figure altogether, there is still more than sufficient evidence that numerosity is satisfied. All that to say, even if the question of whether Dr. Braun's count of 10,180 class members was "over-inclusive" when compared to the Mr. Couch's count was somehow relevant (which, as discussed, it is not), given the circumstances here, since the count goes only to the noncontroversial question of numerosity, it would be wholly disproportionate to allow GEICO to depose Mr. Couch to fish for whether the total loss claims that made up his count of 10,180 differed from Dr. Braun's, let alone Mr. McDonnell who never came up with that 10,180 figure in the first place.

Further, when the Court reads the cited deposition transcript section in question, it should be clear that there was nothing improper about Dr. Braun's approach, notwithstanding GEICO's effort to cast aspersions. Put simply, Dr. Braun's testimony shows that he wanted to find out why his initial count of 10,428 did not match the 10,180 number Mr. Couch found, and that he therefore investigated further before reaching the same final number of 10,180. *See generally* ECF No. 130 at Tr. 70:7-73:3. Obviously, the fact that Dr. Braun arrived at same number as Mr. Couch is the product of simple counting if done correctly by both and does not mean that Dr. Braun's declaration was not the result of his own independent analysis or that he was trying to "reverse-engineer" a

predetermined number he was instructed by attorneys that he had to reach. Moreover, as discussed above, here Dr. Braun clearly testified that his declaration *is* the result of his own analysis, not the attorneys', and that he did not even want to know how the attorneys arrived at their figures. *See* ECF No. 130 at Tr. 71:4-5 ("I was trying to replicate the results without any input from anybody") and 91:18-94:23 ("I going to do this [analysis] independently. . . . I don't want them [the attorneys] to tell me how to do something. I can do it myself. . . . I independently verified that [10,180] number"). GEICO took nearly seven hours questioning Dr. Braun about exactly how he used GEICO's own master file of 163,000 total loss claims to do all of the calculations in his declaration and had ample opportunity to obtain all the discovery on this point (and any other point raised in Dr. Braun's declaration) that it could conceivably need.

        C.        **Plaintiffs' counsel did not instruct GEICO to rely upon the work of Mr. Couch and Mr. McDonnell to understand Dr. Braun's work.**

GEICO's contention that "[a]t then end of Dr. Braun's deposition, Plaintiffs' Counsel instructed that GEICO should rely upon the work and Declarations of Mr. Couch and Mr. McDonnell to fully understand Dr. Braun's alleged work in this case[,]" *see* ECF No. 130 at 1 and 7, is a blatant misrepresentation of the record and highlights GEICO's desperation to manufacture grounds to expand discovery.

During his deposition, Dr. Braun discussed initially receiving GEICO spreadsheets from Plaintiff's attorneys that were filtered to include only claims for which no sales tax was paid, and that he then requested "the master file[,]" *i.e.*, the complete GEICO spreadsheet with all 163,453 total loss claims. *See id.* at Tr. 55:8-56:3; *see also id.* at Tr. 67:9-19. Later in the deposition, GEICO's counsel described those filtered spreadsheets as "subsets of" GEICO's original spreadsheets "that were associated with Mr. Couch's and Mr. McDonnell's declarations" and asked Plaintiffs' counsel to produce them in response to GEICO's subpoena to Dr. Braun. *See id.* at Tr. 64:3-67:19. At the end of the deposition, GEICO's counsel again referenced "[s]ome additional

documents we talked about today" and Plaintiffs' counsel responded, "I think you were talking about the data that was relied on by Alex [Couch] and [Ruairi McDonnell], and those are attached to their reports. So whatever they relied on its attached to their report. . . . As far as I can tell. There's no separate data." *See id.* at Tr. 196:16-197:3. Plaintiff's counsel was *not* representing to GEICO that it needed to look to the attorney declarations to understand Dr. Braun's work; instead, counsel was simply stating that as far as he knew, *the particular documents that GEICO was asking about* were the documents attached to the attorney declarations.

As it happens, neither the Couch nor McDonnell declarations include a filtered spreadsheet with the over 10,000 claims that did not have sales tax paid, which is what Dr. Braun was evidently referencing. *See* ECF Nos. 85 and 82. But plainly, whether GEICO was entitled to production of such a spreadsheet goes to the separate question of what documents Dr. Braun should have produced prior to his deposition (as discussed further *infra*), and does not have anything to do with whether Mr. Couch or Mr. McDonnell should be deposed. Further, GEICO's access to such a spreadsheet is unnecessary to GEICO's ability to challenge Dr. Braun's conclusions because as Dr. Braun made clear, he relied not on a filtered spreadsheet, but on his own independent analysis of the full GEICO spreadsheets (or as he called it, the "master files") in order to complete the analysis set forth in his declaration. *See* ECF No. 130 at Tr. at 69:23-72:17, 74:12-75:10, 88:18-92:8.

### D. GEICO's claim that Plaintiff's counsel "gamed" Dr. Braun's subpoena is false and irrelevant to whether Mr. Couch or Mr. McDonnell should be deposed.

GEICO spends the second part of its supplemental brief complaining that Plaintiff "gamed" the document subpoena GEICO served on Dr. Braun on April 23, 2025 (two weeks after his declaration was served), giving him just eight days (six business days) to respond. *See* ECF No. 130 at 5-8.

For one, GEICO should not have served a documents subpoena on Dr. Braun in the first place because the Third Amended Scheduling Order does not provide for any discovery by GEICO

beyond the deposition of Dr. Braun. *See generally* ECF No. 113. Moreover, GEICO's document subpoena providing only eight days to respond, did not give a reasonable time for compliance, which is inexcusable since GEICO had Dr. Braun's declaration more than two weeks prior to the subpoena's service. *See, e.g., Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*, 2020 U.S. Dist. LEXIS 145596, at *5 (S.D.N.Y. Aug. 13, 2020) ("courts in this circuit have found fourteen days to be presumptively reasonable, whereas notice of a week or less has generally been considered unreasonable"). More importantly, this has nothing to do with whether Mr. Couch or Mr. McDonnell have relevant information that is proportional to the needs of the case and whether GEICO should be permitted to take their depositions. Tellingly, GEICO does not even attempt to argue that Plaintiff's so-called "gatekeeping" is relevant to its desire for the depositions of Mr. Couch or Mr. McDonnell in any way. *See* ECF No. 130 at 5-8.

### III.  CONCLUSION

For these reasons, Plaintiff asks that the Court enter an order stating that the Third Amended Scheduling Order does not permit GEICO to take the depositions of Mr. McDonnell or Mr. Couch nor seek written discovery from them.

Dated: May 13, 2025

Respectfully submitted,

By:   s/ *Joseph N. Kravec, Jr.*
          Joseph N. Kravec, Jr.

**FEINSTEIN DOYLE PAYNE
 & KRAVEC, LLC**
Joseph N. Kravec, Jr., Esquire
Kaitlyn M. Burns, Esquire (admitted *pro hac vice*)

29 Broadway, 24th Floor
New York, NY 10006-3205
Telephone: (212) 952-0014
Email: jkravec@fdpklaw.com
           kburns@fdpklaw.com
    and

429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, PA 15219
Telephone: (412) 281-8400
Facsimile: (412) 281-1007

Antonio Vozzolo, Esquire
Andrea Clisura, Esquire
**VOZZOLO LLC**
499 Route 304
New City, New York 10956
Telephone: (201) 630-8820
Facsimile: (201) 604-8400
Email: avozzolo@vozzolo.com
         aclisura@vozzolo.com

and

345 Route 17 South
Upper Saddle River, New Jersey 07458
Telephone: (201) 630-8820
Facsimile: (201) 604-8400

Edmund A. Normand, Esquire (admitted *pro hac vice*)
**NORMAND PLLC**
3165 McCrory Place, Suite 175
Orlando, FL 32803
Telephone: (407) 603-6031
Facsimile: (888) 974-2175
Email: ed@normandpllc.com

*Counsel for Plaintiff and the Proposed Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of May, 2025, a true and correct copy of the foregoing was electronically served upon all counsel of record in this matter.

By: *s/ Joseph N. Kravec, Jr.*
Joseph N. Kravec, Jr.