UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHN MARCELLETTI, *on behalf of himself
and all others similarly situated*,

        Plaintiff,

  v.

GEICO GENERAL INSURANCE COMPANY,

        Defendant

**DECISION AND ORDER**

6:23-CV-06211 EAW CDH

## INTRODUCTION

In this putative class action, plaintiff John Marcelletti ("Plaintiff") asserts a claim for breach of contract based on defendant GEICO General Insurance Company's ("GEICO" or "Defendant") failure to pay sales tax as part of the "actual cash value" for total loss vehicles. (Dkt. 1).

Presently before the Court is Defendant's motion to seal information submitted as part of the briefing on Plaintiff's amended motion for class certification, the briefing on the parties' motions to limit and/or exclude witnesses in connection with class certification, and the exhibits submitted in connection therewith. (Dkt. 190). For the reasons that follow, Defendant's motion to seal is granted in part and denied in part.

## BACKGROUND

This case has been referred to the undersigned for all non-dispositive pretrial matters. (Dkt. 28; Dkt. 74). Familiarity with the background of this case is assumed for the purposes of this Decision and Order, and the procedural history of this matter

is discussed only in relevant part.

The Court has ordered the parties in this case to use a bundling procedure for filing any papers submitted in connection with Plaintiff's amended motion for class certification. (Dkt. 111; Dkt. 112). On March 5, 2025, the Court issued a Third Amended Scheduling Order that outlines the bundling procedure and sets forth the applicable deadlines. (Dkt. 113). As relevant here, the Third Amended Scheduling Order provides:

> To the extent any party seeks to seal any papers submitted in connection with the anticipated amended class certification motion and/or response/reply or in connection with any motion to limit or exclude witnesses in connection with class certification and/or response/reply, that party shall take all steps necessary to submit a narrowly tailored and properly supported motion to seal, including conferring with opposing counsel and any relevant third-parties regarding the need for confidentiality. The parties shall, if possible, file a joint motion to seal concerning all documents submitted in support of the anticipated amended class certification motion and/or response/reply and in support of any motion to limit or exclude witnesses in connection with class certification and/or response/reply, that the parties believe should be sealed.

(*Id.* at 4-5).

On December 22, 2025, Defendant filed a motion to seal portions of the briefs and exhibits submitted in connection with: (1) Plaintiff's amended motion for class certification; (2) Defendant's motion to exclude the declaration and opinions of Bradley M. Braun, Ph.D.; (3) Plaintiff's motion to strike and/or exclude portions of Dr. Jonathan T. Tomlin's Testimony and Expert Report; and (4) Plaintiff's motion to exclude or limit the opinions of Defendant's proposed expert Steven R. Wybo. (Dkt.

190).[1] Contemporaneously with filing its motion to seal, Defendant submitted to the Court the relevant briefs and exhibits, in which text has been highlighted to indicate the material that Defendant seeks to have redacted on the public docket. In total, Defendant makes 84 sealing requests,[2] though many of the requests are duplicative, as the underlying information is included in exhibits submitted in connection with more than one brief.

Defendant groups its proposed redactions into five categories of information: (1) "GEICO's Processes/Procedures Related to Total Loss Coverage"; (2) "GEICO's Processes/Procedures Related to Leased Vehicles"; (3) "How GEICO's Data is Maintained and Accessed"; (4) "Analysis of Vehicle Valuations"; and (5) "Personally Identifying Information of a Putative Class Member." (Dkt. 191-1 at 5-9). As with the previous motions to seal it has filed in this case (Dkt. 51; Dkt. 123; Dkt. 131; Dkt. 137; Dkt. 149; Dkt. 154; Dkt. 165; Dkt. 170), Defendant primarily asserts that information in these briefs and exhibits should be sealed because of the risk of competitive harm. (*See* Dkt. 191 at 8-11).

In support of its assertions of competitive harm, Defendant has submitted two declarations—one by Kevin Costigan, a GEICO employee and one of Defendant's designated witnesses, and one by James (Jim) Maynard, a consultant "retained by GEICO to opine on certain documents and information" covered by the motion to seal.

---

[1]    Plaintiff did not make any sealing requests or submit a response to Defendant's motion to seal.

[2]    The Court adopts Defendant's numerical designations (*see* Dkt. 191-1 at 5-9) for the purposes of addressing particular sealing requests.

(*See* Dkt. 191-1 at 11-20). The Costigan declaration is substantively similar to declarations that Defendant has submitted with each of its previous motions to seal (*see, e.g.*, Dkt. 155-1 at 31-33) and generally states that if a competitor were to learn about the information covered by the proposed redactions, "the competitor could use that information to its own economic advantage, to GEICO's economic disadvantage, and could gain a competitive advantage over GEICO and could cause GEICO substantial economic harm." (Dkt. 191-1 at 11-14). The Maynard declaration puts forth more specific explanations as to why disclosure of each of the aforementioned categories of information would cause GEICO economic harm. (*Id.* at 17-20).

## DISCUSSION

### I.   Legal Standard

"As the Second Circuit has explained, the question of whether the public must be allowed access to a court filing implicates both the common law and the First Amendment." *Hatzimihalis v. SMBC Nikko Sec. Am., Inc.*, No. 20 CIV. 8037 (JPC), 2023 WL 3736440, at *1 (S.D.N.Y. May 31, 2023) (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006)). "Under the common law framework, whether a document is a judicial document turns on whether the item is 'relevant to the performance of the judicial function and useful in the judicial process.'" *Id.* (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995)). Under the First Amendment framework, "whether the presumption of public access attaches turns on whether a document bears a close connection to a public judicial proceeding." *Id.* (citing *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004)).

Under the common law framework, the Court applies a three-step analysis to determine whether a document should be sealed. *United Pool Distribution, Inc. v. Custom Courier Sols., Inc.*, No. 22-CV-06314-FPG, 2024 WL 2979365, at *1 (W.D.N.Y. June 13, 2024) (citations omitted). At the first step, "the court determines whether the record at issue is a judicial document—a document to which the presumption of public access attaches." *Olson v. Major League Baseball*, 29 F.4th 59, 87 (2d Cir. 2022) (quotation omitted). "A document is 'judicial' when it is 'relevant to the performance of the judicial function and useful in the judicial process.'" *In re New York City Policing During Summer 2020 Demonstrations*, 635 F. Supp. 3d 247, 251 (S.D.N.Y. 2022) (quoting *Amodeo*, 44 F.3d at 145). "A document is . . . relevant to the performance of the judicial function if it would reasonably have the tendency to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *Id.* (quoting *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019)).

At the second step, "[i]f a court determines the record at issue is a 'judicial document,' a determination that thereby attaches the common law presumption of public access to that record, it must next determine the particular weight of that presumption of access for the record at issue." *Olson*, 29 F.4th at 87. "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such

information to those monitoring the federal courts." *Id.* at 87-88 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)).

"Courts determine the weight of the presumption of access . . . on a 'continuum' of importance." *In re New York City Policing*, 635 F. Supp. 3d at 252 (citing *Amodeo*, 71 F.3d at 1049 ("information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance")). "The strongest presumption attaches where the documents determine litigants' substantive rights, and is weaker where the documents play only a negligible role in the performance of Article III duties." *Olson*, 29 F.4th at 89 (quotations, citations, and alterations omitted). "Thus, a strong presumption attaches to materials filed in connection with dispositive motions," *id.* at 90, whereas "the presumption of public access in filings submitted in connection with discovery disputes or motions *in limine* is generally somewhat lower," *Brown*, 929 F.3d at 50.

At the third step, "once the weight of the presumption has been assessed, the court is required to 'balance competing considerations against it.'" *Olson*, 29 F.4th at 88 (quoting *Amodeo*, 71 F.3d at 1050). One such consideration is "the possibility of competitive harm to an enterprise if confidential business information is disclosed." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MC-2542 (VSB), 2023 WL 196134, at *3 (S.D.N.Y. Jan. 17, 2023). "Although the protection of sensitive, confidential, or proprietary business information is a countervailing interest that can militate in favor of sealing, conclusory statements that documents

contain confidential business information are insufficient to justify sealing." *TileBar v. Glazzio Tiles*, 723 F. Supp. 3d 164, 209 (E.D.N.Y. 2024) (quotation and alteration omitted). "Rather, the moving party must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection." *Id.* (quotation and alteration omitted). It is not enough to show "the mere fact that the particular datum has not previously been made available to the public." *Coventry Cap. US LLC v. EEA Life Settlements, Inc.*, No. 17CIV7417VMHBP, 2017 WL 5125544, at *3 (S.D.N.Y. Nov. 2, 2017) (quotation omitted).

Turning to the First Amendment framework, "[t]here are two approaches for determining if . . . a [a First Amendment right of access] attaches to a particular document." *In re Keurig*, 2023 WL 196134, at *5. The first is the "experience and logic" approach, under which the Court considers "both whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* (quotations omitted). "The second approach considers the extent to which the judicial documents are derived from or are a necessary corollary of the capacity to attend the relevant proceedings." *Id.* (quotation and alteration omitted).

"If a First Amendment right of access attaches to [a] document, then the sealing analysis involves the same balancing test required by the common law right. The First Amendment analysis, however, is more stringent and requires that sealing be narrowly tailored to achieve its aim." *In re Terrorist Attacks on Sept. 11, 2001*, No.

03-MD-1570 (GBD)(SN), 2021 WL 5495180, at *1 n.1 (S.D.N.Y. Nov. 23, 2021) (citation omitted). To justify sealing under the more stringent First Amendment standard, the Court must make "specific, on the record findings . . . demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Lugosch*, 435 F.3d at 120.

"The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action[.]" *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997). "Deciding whether to accept judicial documents under seal is a wholly separate inquiry from deciding whether to maintain the confidentiality of documents disclosed between the parties in discovery." *In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis With Kinectiv Tech. & VerSys Femoral Head Prods. Liab. Litig.*, No. 18-MC-2859 (PAC), 2021 WL 1625390, at *1 (S.D.N.Y. Apr. 27, 2021). "[I]t is well-established that confidentiality agreements alone are not an adequate basis for sealing and material designated as Confidential by a protective order might not come overcome the presumption of public access once it becomes a judicial document." *Thomas v. ConAgra Foods, Inc.*, No. 6:20-CV-06239-EAW-MJP, 2023 WL 11984926, at *1 (W.D.N.Y. May 3, 2023) (quotations and alterations omitted). "That a document was produced in discovery pursuant to a protective order has no bearing on the presumption of access that attaches when it becomes a judicial document." *In re Keurig*, 2023 WL 196134, at *5 (quotation and alteration omitted).

## II.    **Application**

At the first step of the analysis, the Court finds that the briefs and exhibits at issue are judicial documents because they were submitted specifically to influence the Court's ruling on Plaintiff's amended motion for class certification and the parties' motions to exclude and/or limit expert testimony. *See McKoy v. Trump Corp.*, No. 18 CIV. 9936 (LGS), 2023 WL 7924685, at *3 (S.D.N.Y. Nov. 16, 2023) (citing cases for the proposition that motions for class certification and motions to exclude expert testimony and related exhibits are judicial documents). Defendant does not argue that these briefs and exhibits do not constitute judicial documents.

The Court further finds that a First Amendment right of access attaches to these documents. *See, e.g., In re Keurig*, 2023 WL 196134, at *5; *In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis with Kinectiv Tech. & Versys Femoral Head Prods. Liab. Litig.*, No. 18-MC-2859 (PAC), 2021 WL 4706199, at *2 (S.D.N.Y. Oct. 8, 2021); *Tropical Sails Corp. v. Yext, Inc.*, No. 14 CIV. 7582, 2016 WL 1451548, at *3 (S.D.N.Y. Apr. 12, 2016).

At the second step, the Court finds that the presumption of public access to these documents is strong, albeit not at its zenith. *See Ndugga v. Bloomberg L.P.*, No. 20 CIV. 7464 (GHW) (GWG), 2025 WL 2302089, at *1 (S.D.N.Y. Aug. 11, 2025) ("Filings related to *Daubert* motions and class certification motions are judicial documents subject to a significant presumption of public access under the common law and the First Amendment.") (quotation omitted); *Savage v. Sutherland Glob. Servs., Inc.*, No. 6:19-CV-06840 EAW, 2025 WL 1224346, at *2 (W.D.N.Y. Apr. 28,

- 9 -

2025) ("Documents submitted in connection with a motion for class certification are judicial records to which a strong presumption of access applies."). Moreover, as other courts have observed, "[c]lass actions are by definition of public interest because some members of the public are members of the case, and 'the standards for denying public access to the record' should therefore be strictly construed." *Grayson v. Gen. Elec. Co.*, No. 3:13CV1799 (WWE), 2017 WL 923907, at *1 (D. Conn. Mar. 7, 2017) (quoting *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016)).

At the third step, the Court must balance Defendant's identified reasons for sealing against the strong presumption of public access afforded to the underlying documents. And because the First Amendment right of access applies, the Court must apply the more stringent standard, and must find that sealing is necessary to preserve higher values.

As an initial matter, the Court will permit Defendant to redact the information it has designated as personally identifiable information. This information is the vehicle identification number ("VIN") of a vehicle belonging to a member of the putative class. The VIN constitutes personally identifiable information that is immaterial to the resolution of the parties' motions. Furthermore, "the privacy interests of the insureds outweighs the interest of the public to know the specific identity of any of the insureds." *Jama v. State Farm Fire & Cas. Co.*, No. C20-652 MJP, 2021 WL 4255233, at *2 (W.D. Wash. June 15, 2021) (allowing redaction of VINs in exhibits filed in connection with motion for class certification); *see also In re*

- 10 -

*Keurig*, 2023 WL 196134, at *10 ("The privacy of third parties is the type of higher value that justifies sealing even where the First Amendment right of access attaches."). The Court thus grants Defendant's sealing requests 40, 59, and 74.

The remainder of Defendant's sealing requests, however, are denied. While Defendant's motion is better supported and more narrowly tailored than its previous motions to seal, the information that Defendant proposes to redact is ultimately not sensitive enough for the Court to conclude that the risk of competitive harm is sufficiently serious to overcome the strong presumption of public access.

Having carefully reviewed the unredacted copies of the documents submitted to the Court, the bulk of the information that Defendant has designated as relating to GEICO's processes/procedures related to total loss coverage, GEICO's processes/procedures related to leased vehicles, and how GEICO's data is maintained and accessed is simply too generic for a competitor to use it to GEICO's detriment. *See In re Keurig*, 2023 WL 196134, at *9 (denying request to seal "information about proprietary business practices" that was "so generic that it [was] not clear why it would work a competitive harm"). To point to a representative example, Defendant seeks to redact the fact that GEICO's claims database is "word searchable." By way of another example, Defendant seeks to redact the fact that an insured's claim file will include "everything that was documented that happened through the claim." The Court is not persuaded that a competitor could meaningfully utilize this sort of generic information to determine, as Defendant asserts, "if their total loss data is commensurate with the marketplace." (Dkt. 191-1 at 19).

Certain proposed redactions involve deposition transcripts wherein Plaintiff attempts to identify GEICO's practices with *some* level of specificity. But these transcripts and the references to them in the parties' briefs do not warrant sealing because they generally consist of Defendant and its witnesses demurring and representing that such practices vary from claim to claim. In other words, Defendant proposes to redact discussion of GEICO's claimed *lack* of uniform practices—for example, in connection with how it documents a claimant's final net settlement or the sales tax owed for claims on total loss leased vehicles. Similarly, Defendant proposes to redact assertions that GEICO's settlement documentation may not reflect a claimant's actual net settlement. While these assertions may be useful in advancing Defendant's arguments regarding the feasibility of class certification, they significantly weaken the asserted basis for their sealing. If GEICO does not have consistent, identifiable practices with respect to documenting total loss claims for leased vehicles, then it is not clear what replicable practices a competitor could purportedly glean from these documents.

In addition, the nature of GEICO's claims documenting practices is of central relevance to the Court's disposition of Plaintiff's amended class certification motion. Such relevance further counsels against sealing. *See, e.g.*, *Lavin v. Virgin Galactic Holdings, Inc.*, No. 21-CV-3070 (ARR) (TAM), 2025 WL 1031060, at *3 (E.D.N.Y. Apr. 2, 2025) (denying request to seal information that was "highly relevant" to motion for class certification); *In re SunEdison, Inc. Sec. Litig.*, No. 16-CV-7917 (PKC), 2019 WL 126069, at *3 (S.D.N.Y. Jan. 7, 2019) (same).

Other proposed redactions concern information that is stale. For example, Defendant seeks to redact information and internal memoranda discussing GEICO's policies regarding the payment of sales tax for total loss leased vehicles. Many of the proposed redactions concern GEICO's pre-August 2020 policy on this issue. Generally, the older the information contained in documents, "the less appropriate it is to seal that information" and "the more detailed the supporting material should be submitted to support the sealing of the documents." *In re Keurig*, 2023 WL 196134, at *4-5. Defendant asserts that disclosure of information related to this pre-August 2020 policy "would be an actuarial premium pricing advantage for competitors as they would be able to understand the business reasoning for the change [in policy] as well as the monetary impact to not only the New York market premium pricing for leased vehicles, but to all markets affected by this change." (Dkt. 191-1 at 18). However, the proposed redactions do not divulge or meaningfully address "the business reasoning for the change" or "the monetary impact to . . . premium pricing," and Defendant does not explain in more than conclusory terms how the underlying information would shed light on these issues. Defendant also has not otherwise explained how the disclosure of information regarding these discontinued business practices would cause it competitive harm. Such information therefore does not warrant sealing. *See, e.g.*, *In re Keurig*, 2023 WL 196134, at *9 (denying sealing request for material that was "highly specific" to the moving party's "old . . . business," such that it was "not clear why it would work a broader competitive harm . . . if disclosed now"); *Saint-Jean v. Emigrant Mortg. Co.*, No. 11-CV-2122 (SJ), 2016 WL

11430775, at *7 (E.D.N.Y. May 24, 2016) (denying request to seal information dated from years earlier concerning "practices most of which have long since been discontinued").

Likewise, Defendant fails to overcome the strong presumption of public access to documents disclosing GEICO's current policy regarding the payment of sales tax for total loss leased vehicles. This policy has been in effect since August 2020—*i.e.*, for over five years. "That the polic[y] . . . discussed in years-old documents ha[s] been fully implemented, such that [it is] known to competitors and the public, counsels against finding those documents to still be sensitive." *Allegra v. Luxottica Retail N. Am.*, No. 17CV05216PKCRLM, 2021 WL 4799032, at *4 (E.D.N.Y. Oct. 14, 2021); *see also Grayson*, 2017 WL 923907, at *3 ("Defendant has a weaker interest in retaining confidentiality in a document describing changes to products that have been in the market for years."). Moreover, the information about this policy that Defendant proposes to redact (like other proposed redactions, such as to exhibits related to GEICO's sales tax calculator) is included in—or is at least readily discernible from information included in—unredacted form elsewhere in the documents. *See Oliver Wyman, Inc. v. Eielson*, 282 F. Supp. 3d 684, 707 (S.D.N.Y. 2017) (finding sealing request was "overbroad because the information contained within those redactions [was] otherwise included, unredacted, elsewhere in the document").

A similar analysis applies to Defendant's request to redact portions of GEICO's 2024 claims adjuster handbook and references thereto. Earlier versions of this handbook were the subject of previous motions to seal in this case. Defendant now

asserts that while the 2018 and 2023 versions of this handbook are publicly available, "it would be to a competitor's advantage to know whether the current and operative version of [the handbook] contains the same, similar, or different information." (Dkt. 191-1 at 18). But under this logic, a party could avoid disclosing even its most long-standing, publicly known business practices, so long as it periodically issued a document indicating that such practices are still in effect. This would be inconsistent with the aforementioned case law and the general rule in this Circuit that sealing is "improper where the relevant material was already made public." *Shetty v. SG Blocks, Inc.*, No. 20CV550ARRMMH, 2021 WL 4959000, at *4 (E.D.N.Y. Oct. 26, 2021) (collecting cases). If the portions of the handbook at issue contain different information than the previous, publicly available editions, then Defendant could easily say so. However, Plaintiff's briefs indicate that the relevant information has been available in GEICO's claims adjuster handbook for at least several years, including the 2023 edition, and would therefore already be public. (*See* Plaintiff's Memorandum of Law in Support of his Motion to Strike and/or Exclude Portions of Dr. Jonathan T. Tomlin's Testimony and Expert Report at 17).

The Court lastly addresses Defendant's request to seal information it has designated as relating to the analysis of vehicle valuations. The information covered by this category is generally offered in connection with Defendant's objections to the so-called "pre-tax valuation" amounts used by Plaintiff's expert Dr. Braun (and drawn from Defendant's data), and Defendant's expert Dr. Tomlin's comparison of the pre-tax valuation amounts to the same vehicles' values as reported by various used car

valuation guides. Defendant asserts that disclosure of this information would allow competitors to "understand how the values GEICO considers in adjusting total loss claims compare against other available values, which information competitors could use to adjust their own total loss settlement procedures." (Dkt. 191-1 at 19). However, Defendant fails to show how this information could possibly be reverse engineered by competitors to harm GEICO. Defendant characterizes the pre-tax valuation amount as "meaningless" in its briefs and expressly denies the significance of the underlying data, stating that "this Court cannot . . . rely on certain data GEICO's adjusters use as a tool in adjusting and settling total loss claims[.]" (Defendant's Memorandum of Law in Support of Motion to Exclude the Declaration and Opinions of Bradley M, Braun, Ph.D. at 10). If, as Defendant represents, the pre-tax valuation is merely a calculation of data points that do not correlate to a vehicle's actual cash value or an insured's actual net settlement, then it is unclear how disclosure of information related to the pre-tax valuation could result in harm serious enough to overcome the strong presumption of public access—particularly where the information is highly relevant to the dispute underlying the parties' motions to exclude expert testimony. *See In re Keurig*, 2023 WL 196134, at *8 (explaining that certain information was "simply too relevant to th[e] dispute to permit sealing").

Maynard's declaration also references the harm of "giv[ing] competitors information to assist them in targeting GEICO employes who are professionally trained in [GEICO's] complex and specialized total loss claim function." (Dkt. 191-1 at 17; *see also* Dkt. 191 at 9-10). The Court finds this asserted harm too remote and

- 16 -

speculative to overcome the strong presumption of public access. As discussed herein, the documents at issue disclose essentially generic, stale, or already publicly disclosed processes and procedures. Moreover, the documents at issue do not reference any specific GEICO employees other than its designated witnesses, whose names Defendant does not seek to redact. It is not clear how a competitor could use the information in these documents to more effectively target additional, unnamed GEICO employees. It is also not clear from Defendant's motion to seal that GEICO has in fact "been the victim of such poaching in the past or that competitors in [GEICO's] field actively poach employees from other businesses." *Waterkeeper All., Inc. v. Alan & Kristin Hudson Farm*, 278 F.R.D. 136, 143 (D. Md. 2011) (finding hypothetical possibility of employee poaching did not warrant sealing). Defendant has thus not shown that this identified prospective harm overcomes the strong presumption of public access.

## CONCLUSION

For the foregoing reasons, Defendant's motion to seal (Dkt. 190) is granted in part and denied in part. Defendant may redact the information it has designated as personally identifiable information of a putative class member, corresponding to sealing requests 40, 59, and 74 (*see* Dkt. 191-1 at 7-9). All other sealing requests are denied.

Within seven days of the entry of this Decision and Order, the parties shall submit to the Court their papers in connection with Plaintiff's amended motion for class certification and the parties' motions to limit and/or exclude witnesses

consistent with the procedure outlined in the Third Amended Scheduling Order and this Decision and Order. (*See* Dkt. 113 at 5-6).

      **SO ORDERED**.

_Colleen D. Holland_
COLLEEN D. HOLLAND
United States Magistrate Judge

Dated:  Rochester, New York
        February 26, 2026